COMMONWEALTH *vs.* JOHN H. BAKER.

Bristol.    October 5, 1961. — November 13, 1961.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Bail. Practice, Criminal,* Bail, Requests, rulings, and instructions, Probable cause hearing. *Homicide. Pleading, Criminal,* Complaint.

A judge's granting of requests for rulings "So far as they are applicable to the facts" found by him was not a proper method of dealing with the requests; they should have been dealt with specifically. [163–164]

At a hearing in the Superior Court of a motion to admit to bail a defendant charged with crime who had been ordered by a District Court, following a hearing at which it had found probable cause, to be held without bail in a county jail to await the action of the grand jury, the sole duty of the judge of the Superior Court was to decide whether the defendant should be admitted to bail; the proceeding in the District Court was not open for review. [164]

A complaint for murder which was in the statutory form prescribed by G. L. c. 277, § 79, and contained no allegation of murder in the second degree charged murder in the first degree. [164]

The history of bail traced. [165–168]

A defendant charged with murder in the first degree may be admitted to bail in the discretion of the court. [168]

Where a judge of the Superior Court reported his denial of a motion for bail by a defendant charged with murder in the first degree, but this court could not determine whether the judge rightly considered the offence to have been bailable and denied bail in the exercise of his discretion or erroneously considered the offence to have been nonbailable and denied bail solely on that ground, the denial of the motion was vacated so that the defendant might have the motion reheard. [168–169]

MOTION FOR BAIL, filed in the Superior Court on July 31, 1961, heard by *Smith, J.*

The case was submitted on briefs.

*Edmund Dinis,* District Attorney, & *Peter B. Gay,* Assistant District Attorney, for the Commonwealth.

*George H. Young, Richard Paull,* & *Solomon Rosenberg,* for the defendant.

SPALDING, J.  On June 10, 1961, the defendant shot and killed one Herbert John Straker, Junior, in Westport.  The circumstances of the killing need not concern us.  Thereafter the defendant was brought before the Second District Court of Bristol on a complaint charging him with murder, and he was arraigned and pleaded not guilty.  Following a hearing, the court, on July 10, 1961, found probable cause and ordered the defendant to be held without bail in the county jail to await the action of the grand jury.

Subsequently, the defendant presented a motion to a judge of the Superior Court, presumably under G. L. c. 276, § 57, asking that he be admitted to bail.  This motion, after hearing, was denied.  The judge made findings of facts and reported the case to this court.  G. L. c. 278, § 30A (inserted by St. 1954, c. 528[1]).  At the hearing in the Superior Court the defendant presented fifteen requests for rulings which the judge dealt with as follows: "So far as they are applicable to the facts . . . [found] they are respectively granted."  This cryptic method of dealing with requests is disapproved.  See *M. DeMatteo Constr. Co.* v. *Common-*

---

[1] This reads: "If, prior to the trial of a person in a criminal case in the superior court, a question of law arises which, in the opinion of the presiding justice, is so important or doubtful as to require the decision of the supreme judicial court thereon before trial, in the interest of justice, he may report the case so far as necessary to present the question of law arising therein; and thereupon the case shall be continued for trial to await the decision of the supreme judicial court."

*wealth,* 338 Mass. 568, 585–586. It is often difficult, if not impossible, in such a case to determine which requests were granted or which were refused. See *Row* v. *Home Sav. Bank,* 306 Mass. 522, 524–525. In that case, because of the vagueness of the disposition, all the requests were treated as denied. We need not go so far here but much difficulty and confusion could have been avoided if the requests had been dealt with specifically.

The hearing on the motion for bail in the Superior Court, for the most part, appears to have been an attempt to obtain a review of the probable cause hearing in the District Court. A transcript of the evidence in that hearing was introduced, and the defendant presented numerous requests which were designed to elicit rulings on the scope of that hearing, it being the defendant's contention that much evidence was excluded in the District Court which ought to have been admitted. But all of this is in our opinion irrelevant. When the District Court bound the defendant over for the grand jury that court no longer had any jurisdiction over the case. When the motion for bail was presented to the judge of the Superior Court, it did not open up for review by him the proceedings in the District Court. Questions involving the scope of the hearing in the District Court and the admissibility of evidence were not before him. His sole duty was to decide whether the defendant should be admitted to bail. We therefore hold that, irrespective of the proceedings in the Superior Court, the only question brought here by this report is the correctness of the judge's decision in denying the defendant's motion for bail.

Since the complaint was in the statutory form prescribed by G. L. c. 277, § 79, and contained no allegation of murder in the second degree, it charged murder in the first degree. *Metcalf* v. *Commonwealth,* 338 Mass. 648, 649. *Commonwealth* v. *Scicchitani,* 240 Mass. 402, 404. The underlying question for decision is whether a person charged with the crime of murder in the first degree, a capital offence, may be admitted to bail. If he may not, that is an end of the

matter. If he can be bailed, then it will be necessary to determine whether this is a matter of right or is discretionary.

According to a learned legal historian ''The right to be bailed in certain cases is as old as the law of England itself . . ..'' 1 Stephen, History of the Criminal Law of England, 233 (1883). Although there were statutory restrictions on the power of sheriffs and justices of the peace to bail (*id.* at pp. 234–238), it seems that there never were restrictions on the power to bail of the high courts of England (*id.* at 243). See *Fischer* v. *Ball,* 212 Md. 517; 4 Blackstone, Commentaries (8th ed.) 298–300; 2 Hale, Pleas of the Crown 129, (1800); Note, 39 L. R. A. (N. S.) 752. Thus, at the time of our Revolution it appears to have been settled in England that inferior courts could not, but that superior courts could in their discretion, admit a prisoner to bail in any case, including murder.

The law of this Commonwealth seems to have developed along similar lines. From early colonial times bail appears to have been allowable in the court's discretion in capital cases and contempts committed in open court, and as a matter of right in all other cases. The ''Body of Liberties'' (1641) provided that: ''18. No mans person shall be restrained or imprisoned by any Authority whatsoever, before the law hath sentenced him thereto, If he can put in sufficient securitie, bayle or mainprise, for his appearance, and good behaviour in the meane time, unlesse it be in Crimes Capital, and Contempts in open Court, and in such cases where some expresse act of Court doth allow it.'' There is nothing inconsistent with this in St. 1783, c. 51, § 1, cited and relied on by the Commonwealth, which prohibited justices of the peace from bailing prisoners in capital cases. This was analogous to the English practice mentioned above, which placed restrictions on the granting of bail in capital cases by inferior tribunals. Contrary to the Commonwealth's contention, this statute cannot be considered as authority for the proposition that capital offences are nonbailable. Moreover, it has never been brought for-

ward in any of the compilations and has long been inopera-
tive. See Rev. Sts. c. 85, § 26. There is another early
statutory provision which is relevant. By St. 1784, c. 72,
§ 2, (as amended by the Act of March 16, 1785), which deals
with habeas corpus, it was provided that nothing in the act
was to be construed to prevent the Supreme Judicial Court
"from bailing any person wherever and for whatever of-
fence committed, at their discretion, whenever the circum-
stances of the case shall appear to require it."

The Revised Statutes of 1836 embody the basic structure
for our present statutory bail scheme. See §§ 17 and 22 of
c. 135, now §§ 42 and 57 of G. L. c. 276. Section 35 of c. 111
retained the power of the Supreme Judicial Court to admit
to bail a prisoner "for whatever cause he may be committed
or restrained." (See now G. L. c. 248, § 25.) We have
found nothing in the Revised Statutes which otherwise pur-
ported to define bailable offences.

Coming down to the General Statutes of 1860, we find
that § 54 of c. 170 provides that the offences of treason,
rape, and arson shall not be bailable. Rape and arson
were specifically made bailable by St. 1871, c. 61, § 1, and
this was continued in the Public Statutes of 1882 (Pub. Sts.
c. 212, § 72), which provided only that treason was to be
nonbailable. This last provision reappeared in R. L. c. 206,
§ 1 (1902), and now is embodied in G. L. c. 264, § 1. Thus,
as far as statutory law is concerned, there seems to be no
basis for holding that murder is a nonbailable offence.
There are no statutory restrictions in our present law anal-
ogous to St. 1783, c. 51, § 1, discussed above. Neither
§§ 42 or 57 of G. L. c. 276, which governs the subject of bail
generally, nor §§ 19–21 of c. 248 (habeas corpus) define non-
bailable offences.

Our case law on this subject is extremely meager. In
*Dunlap* v. *Bartlett,* 10 Gray, 282, a per curiam opinion, a
prisoner who had seriously wounded another had been
denied bail in a police court. On habeas corpus this court
ordered the prisoner admitted to bail, saying, "This party
not being held for a capital offence, nor it appearing that he

ever will be, it is a case for bail." This, perhaps, is an intimation that capital cases were nonbailable, but no authority was cited in support of the statement. The very brief statement (apparently by the reporter) in *Commonwealth v. Trask,* 15 Mass. 277, tends in this direction. But in both cases it is not improbable that the court meant only that in capital cases bail was not a matter of right.

Our examination of the law existing elsewhere reveals that murder appears to be a bailable offence in the discretion of the courts in England (see *Rex* v. *Phillips,* [1947] 32 Cr. App. R. 47); in Australia (see *Rex* v. *Light,* [1954] Vict. L. R. 152, 154); and in the Federal courts (Rule 46 [a] [1] of the Federal Rules of Criminal Procedure [1946], 327 U. S. 868[1]). In most of the States of this country all crimes, except capital cases where "the proof is evident or the presumption great," are bailable as of right. In some States bail in capital cases would appear to be allowable in the discretion of the courts even where the "proof is evident or the presumption . . . great." See Am. Law Inst., Code of Criminal Procedure, 338–343 (Official Draft, March 16, 1931); Orfield, Criminal Procedure from Arrest to Appeal, 107–108; Note, 39 L. R. A. (N. S.) 752; Note, 70 Yale L. J. 966, 977; Note, 106 U. Pa. L. Rev. 693, 695–696. Section 67 of the American Law Institute's Code provides that where the "proof is not evident or the presumption not great" that the prisoner is guilty of a capital offence, he may be admitted to bail in the discretion of the court.

Because of the paucity of authority on the subject in our books, we have traced the history of bail at some length. From this it would appear that the practice in this Commonwealth in colonial times (as evidenced by § 18 of the

[1] The present rule in Federal courts is substantially the same as the bail provisions of the Judiciary Act of 1789. There in § 33 it was provided that all noncapital offences were bailable and that capital offences were bailable by "the supreme or a circuit court, or by a justice of the supreme court, or a judge of a district court, who shall exercise their discretion therein, regarding the nature and circumstances of the offence, and of the evidence, and the usages of law." 1 Stat. 73, 91. See *United States* v. *Hamilton,* 3 Dall. 17, where a defendant charged with high treason was admitted to bail. See also *Stack* v. *Boyle,* 342 U. S. 1.

"Body of Liberties") was that in capital crimes bail was permissible in the discretion of the court. There is every reason to believe that this usage and practice, which was deeply imbedded in our law prior to the Revolution, and is consistent with common law traditions, continued to be part of our law thereafter. The most likely method of abrogating this usage would be by statute, as the Legislature has done in the case of treason, or constitutional provision; but neither our statutes nor our Constitution does so.[1]

We conclude, therefore, that one charged with the capital offence of murder in the first degree may be admitted to bail, and that bail in such a case is not a matter of right but is discretionary with the judge, who is to give due weight to the nature and circumstances of the case. See Rule 46 (a) (1) of the Federal Rules of Criminal Procedure (1946), 327 U. S. 868. On the subject of discretionary bail in capital cases, Blackstone's observations are no less pertinent today than they were two hundred years ago. "And herein," he said, "the wisdom of the law is very manifest. To allow bail to be taken commonly for such enormous crimes, would greatly tend to elude the public justice: and yet there are cases, though they rarely happen, in which it would be hard and unjust to confine a man in prison, though accused even of the greatest offence." 4 Blackstone, Commentaries (8th ed.) 299.

In the case at bar the judge may have considered the offence to have been bailable and denied bail in the exercise of his discretion. If that was the situation, then there was no error of law and the denial of the motion for bail must be affirmed. On the other hand the judge may have considered the offence to have been nonbailable, and denied bail on that ground, without ever reaching the question of discretion. If that was the case, then his ruling would be tainted by error of law. See *Peterson* v. *Cadogan*, 313 Mass. 133, 134–135. From the manner in which the judge

---

[1] The only provision of our Constitution touching the subject of bail is art. XXVI of the Declaration of Rights prohibiting excessive bail.

disposed of the defendant's requests we cannot be sure what his rulings were. In view of this, together with the uncertain state of the law on the subject of bail in capital cases, we are of opinion that the defendant should have the right to have his motion reheard so that it can be considered in the light of the principles herein set forth. The denial of the motion is vacated.

*So ordered.*