Nancy A. **FREDETTE**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

Argued Sept. 1, 1980.

Reargued April 1, 1981.

Decided April 14, 1981.

Glassman, Beagle & Ridge, Caroline D. Glassman (orally), Portland, C. Alan Beagle, Cloutier & Woodman, James F. Cloutier, Portland, for plaintiff.

William R. Stokes (orally), Wayne S. Moss (orally), Charles K. Leadbetter, John Gleason, Asst. Attys. Gen., Augusta, for defendants.

Before WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

WERNICK, Justice.

Invoking the traditional "great writ of liberty", habeas corpus, by a petition addressed to the concurrent jurisdiction of the Supreme Judicial Court (14 M.R.S.A. § 5301), petitioner Nancy A. Fredette alleged that she had been unlawfully restrained of her liberty because the justice who presided at her jury trial for murder refused, after the jury had found petitioner guilty of murder, to admit her to bail pending further judicial review of the adjudication of her guilt.

Now before this Court, the Law Court, is petitioner's appeal from the judgment entered in the Supreme Judicial Court on the decision of a single justice of that court denying petitioner habeas corpus relief. In concluding that petitioner is not being unlawfully restrained of her liberty, the single justice decided that Article I, § 10 of the Constitution of Maine divests judicial *power* to admit to bail, before conviction, a person accused of the crime of murder "when the proof is evident or the presumption great" and, therefore, that it would be "anomalous" to recognize the existence of such judicial power after conviction when the jury's verdict of guilt had made the "proof ... evident."

Although we disagree with the single justice's interpretation of the meaning of Article I, § 10 in the "before conviction" context, by a different line of reasoning we agree with his ultimate conclusion that a

court lacks power, and therefore cannot exercise discretion, to admit to bail a person who stands convicted, as does petitioner, of the crime of murder. Accordingly, we deny the appeal and affirm the judgment of the Supreme Judicial Court denying the petition for writ of habeas corpus.

We have before us the following factual situation. Indicted by a grand jury sitting in York County, petitioner was tried before a jury in the Superior Court in Lincoln County[1] and found guilty of murder, as charged to have been committed in violation of 17–A M.R.S.A. § 201(1)(A).[2] While awaiting trial, petitioner had been admitted to bail, and having met the bail requirements, she had been released from custody during the trial. After the jury returned its verdict of guilty, and the presiding justice had set July 25, 1980 as the date for sentencing, the justice thereupon revoked petitioner's admission to bail and ordered her committed to the custody of the Sheriff of York County.[3]

Apparently to bring into play the provision of Rule 46(a)(2) M.R.Crim.P., which was then in force, that "after conviction" and

> "[p]rior to the filing of a notice of appeal, the justice who presided at the trial may enter an order setting bail pending appeal conditioned upon the timely filing of a notice of appeal",

petitioner represented to the presiding justice that she was going to file a motion for a new trial and notice of appeal, and she requested to be admitted to bail. The justice denied the request. He stated expressly that the "ground" of his refusal to allow petitioner bail "pending ... hearing on motion for a new trial and pending appeal" was that she had been "found guilty of murder."

On July 2, 1980, petitioner brought the instant petition for writ of habeas corpus. She also made "application", pursuant to Rule 46(a)(2) M.R.Crim.P., for a justice of the Supreme Judicial Court to admit her to bail "pending appeal." After a consolidated hearing, a single justice of the Supreme Judicial Court denied both the petition for writ of habeas corpus and the "application" to be admitted to bail.

On July 15, petitioner appealed to the Law Court[4] from the entry of the judgment in the Supreme Judicial Court denying the petition for writ of habeas corpus. Expedited disposition of the appeal was sought, and after all counsel involved had agreed to a shortened time for the filing of briefs, oral argument of the appeal was ordered held, and was held, at this Court's September, 1980, Term.[5] The appeal was again argued before this Court on April 1, 1981.

### 1.

All of the proceedings involved in this appeal took place after the jury's verdict and prior to the sentencing of the defendant and thus preceded the entry of the judgment of conviction triggering reviewability by "appeal." See Rules 32(b) and 37(c) M.R.Crim.P. We are therefore called

1. The alleged crime was committed in York County. Upon a motion for change of the venue of the trial, the trial was ordered held before a jury convened in Lincoln County.

2. 17–A M.R.S.A. § 201(1)(A) provides:
   "*1.* A person is guilty of murder if:
   "*A.* He intentionally or knowingly causes the death of another human being;"

3. Rule 32(a) M.R.Crim.P., provides that "[p]ending sentence the court may commit the defendant or continue or alter the bail."

4. 4 M.R.S.A. § 51 provides:
   "When sitting as a law court to determine questions of law arising in civil actions and in criminal trials and proceedings, the Supreme

Judicial Court shall be composed as provided by rules promulgated by that court and shall hear and determine such questions by the concurrence of a majority of the justices sitting and qualified to act."

5. After petitioner had been sentenced, on July 25, 1980, to serve 35 years imprisonment at the Maine Correctional Center, and final judgment of her conviction was thereafter entered on the docket of the Superior Court, petitioner took an appeal to this Court from the judgment of conviction. The appeal was entered on this Court's docket on July 30, 1980, and it is pending, awaiting the filing of briefs and oral argument.

upon to decide the interrelationship among the following potentially applicable provisions of law: (1) the provision in Rule 32(a) M.R.Crim.P. regarding "bail" after verdict and "pending sentence"; (2) the provisions in Rule 46(a)(2) M.R.Crim.P. pertaining to the defendant's being "admitted to bail after conviction and pending appeal" as well as to the setting [of] bail pending appeal" at a time "[p]rior to the filing of a notice of appeal"; and (3) the provision in Article I, § 10 of the Constitution of Maine prescribing the circumstances in which "[n]o person *before conviction* shall be bailable . . .", (emphasis added) as it may be brought into play by the phrase "in accordance with the Constitution" appearing in Rule 46(a)(2).

■ We decide that in a criminal prosecution where there is a trial by jury, all of the foregoing provisions fix the jury's return of a verdict of guilt as the stage after which the matter of admitting the defendant to bail is open to a difference in evaluation. Rule 32(a) states this expressly. We think, too, it is the meaning of "after conviction" as used in Rule 46(a)(2), more particularly since subsection (2) can fairly be taken to be the chronological complement to the "before *verdict*" stage of the proceedings dealt with in subsection (1) of Rule 46(a) (emphasis added).[6] Moreover, the

words "before conviction" in Article I, § 10 of the Constitution are most reasonably interpreted as referring to the time in a criminal prosecution when the presumption of innocence is still operating and the accused has the strongest claim to admission to bail. Hence, since the return of the jury's verdict of guilt is the time when the presumption of innocence is dissipated, we construe "before conviction" in Article I, § 10 to mean the time before the return of a jury verdict of guilt.

Thus, for the purposes of the applicability of Rule 46(a)(2) and of Article I, § 10 to the situation now before us, the stage of the prosecution was "after conviction."

*2.*

Rule 46(a)(2) therefore has square applicability here, and it states:

"A defendant may be admitted to bail . . . in accordance with the Constitution and statutes of this State."

Our inquiry, then, must be directed not only to the textual provisions of the Rule itself but also to the "Constitution" and "statutes" as further potential sources of controlling law.

■ The initial point to be made derives from the contrast between the textual language "*may* be admitted to bail" (emphasis

---

**6.** As originally promulgated effective December 1, 1965, Rule 46(a) did not contain a separate subsection (1) and (2) to deal with the "before verdict" and "after conviction and pending appeal" contexts but covered them in a single sentence reading: "A defendant shall be admitted to bail before conviction and may be admitted to bail after conviction and pending appeal in accordance with the constitution and statutes of this State.

We note, too, that effective September 1, 1980, and therefore without applicability to this case, the following amendments were made relative to Rule 46. First, the entirety of paragraph (a) of Rule 46 was deleted. Substituted in its place was a new paragraph reading: "*(a) Right to Bail.* A defendant shall be released before verdict or finding of guilt in accordance with the Constitution and statutes of this State. A defendant may be released after a verdict or finding of guilt but before entry of judgment in accordance with the Constitution and statutes of this State."

Also, an additional Rule 46A was promulgated entitled "BAIL PENDING APPEAL." It deals in its entirety with the admitting to bail of a person who is described as a "convicted defendant."

It may be, and we presently intimate no opinion on the point, that the above express references in amended Rule 46(a) to the period "after a verdict or finding of guilt but before entry of judgment" would suggest that the words "convicted defendant" in newly promulgated Rule 46A describe a defendant against whom a judgment of conviction has been entered, rather than a defendant at that stage of the prosecution where only a verdict of guilty has been returned.

In any event, as we have already stated, these amendments have no applicability to the present case, and they do not affect the interpretation we have given to the word "conviction" as that word appeared in the formulation of Rule 46(a) prior to September 1, 1980, or as it has always appeared in Article I, § 10 of the Constitution of Maine.

added) appearing in subsection (2) and that appearing in subsection (1), that "before verdict" a defendant "*shall* be admitted to bail . . . ." (emphasis added) This contrast makes plain that after verdict of guilty a defendant has no "right" to be admitted to bail, in the sense that it is not mandatory that the court admit the defendant to bail, but the court has *discretion* to admit a convicted defendant to bail or to deny him admission to bail, as the court may deem appropriate.

As to the further possible sources of content, we investigate, first, what content the "statutes" may yield. We find no statute currently in effect, or that may have been in effect since Rule 46(a) was promulgated effective December 1, 1965, applying in terms to the subject matter now before us. That subject-matter we identify as the following: an accused's being admitted to bail by a court acting in the direct course of a criminal prosecution at the stage of the prosecution which is subsequent to the return of a jury verdict finding the accused guilty of an offense serious enough to be punishable by imprisonment in the State Prison.[7]

■ Turning, then, to the "Constitution" as the other potential source of content referred to in Rule 46(a)(2), we see in it only two provisions relating to bail. The first of these, found in Article I, § 9, states that "excessive bail shall not be required." We interpret this provision as providing only that where a defendant in a criminal prosecution must, or may, be admitted to bail, the bail shall not be excessive. It

therefore casts no light on the problem of the instant case: whether, and in what circumstances, such a defendant may (or must) be admitted to bail.[8] The other provision, in Article I, § 10, as we have previously mentioned, applies in terms only to the time "before conviction", which, in the context of a jury trial, we have construed to mean the period prior to the jury's return of a verdict of guilty. Hence, as taken within its own confines, the textual language of Article I, § 10 makes it inapplicable to the instant situation.

Do these circumstances, then, compel the conclusion that from the time it was promulgated Rule 46(a) conferred an *utterly unlimited* judicial discretion to admit a defendant to bail after conviction (although the Rule would incorporate whatever limitations might later be imposed either by constitutional amendment or the enactment of legislation)? We cannot so conclude.

Such an interpretation of the Rule would signify a radical change of the substantive law regarding admission to bail previously in force which had been established, as we shall explain more fully, from the earliest days of Maine's statehood. Nothing in the legislative history, however, suggests legislative intendment to effectuate such a change. Furthermore, in the absence of legislative intendment, to attribute to the Supreme Judicial Court the intendment, by rule alone, to make so drastic a change of the *substantive* law of bail could give rise to the argument—to be avoided if at all reasonably possible—that the Court may have acted in excess of its power to promulgate rules of criminal *procedure*.

---

**7.** Thus, 14 M.R.S.A. § 5542 (1980) is plainly inapplicable by reason of its express language *excluding* from its reach the situation of a defendant against whom "a verdict of guilty has been rendered . . . for an offense punishable in the State Prison . . . ." In addition, this statute is inapplicable, here, because it does not purport to deal with the authority of a *judge* to admit to bail after verdict of guilt; it addresses only the powers of *bail commissioners* in that context, in regard to the less serious crimes (those not punishable by imprisonment in the State Prison).

**8.** This interpretation is in accord with the interpretation by the Supreme Court of the United

States of the provision against "excessive bail" in the Eighth Amendment to the Constitution of the United States. As the Court said in *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952):

"The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept." *Id.,* at 545, 72 S.Ct. at 536–37.

Prior to December 1, 1965, the law of Maine regarding admission to bail was as follows. At least until 1860 the statutes governing the subject of an accused's being admitted to bail by a judge acting in the direct course of a criminal prosecution, and at the stage after the return of a verdict of guilty, referred to the criterion whether the offense charged against the accused was currently punishable by death, i. e., "capital." If the offense charged was thus "capital", the court was absolutely divested of power to admit to bail. The mechanism by which this result was achieved was the imposition of a requirement that capital offenses be tried at nisi prius by at least two justices of the Supreme Judicial Court, and the further provision that as to such trials, review by the Law Court would not lie as a matter of course but would lie only upon issuance of a "writ of error", as "allowed by one of the justices of the supreme judicial court." If such a writ of error was "allowed" to issue, the statutes conferred *no power* with regard to admission of the defendant to bail. This was in striking contrast to the fact that such power had been conferred regarding all *non-capital* offenses—further review by exceptions, or writ of error, having been authorized for such offenses as a matter of course. *See*

P.L. 1823, c. 219; R.S. 1841, c. 172, § 41, and c. 143, §§ 7, 8 and 9.

In 1860, the legislature removed the requirement that capital offenses be tried before a minimum of two justices of the Supreme Judicial Court, and it also authorized review by exceptions as a matter of course in capital cases. P.L. 1860, c. 133, § 1.

In light of this elimination of the prior differences in the procedures for the trial and review of capital and non-capital offenses, in 1869 the legislature took a different approach to the matter of the *power* of the court to admit to bail after verdict of guilty and pending review. It did this by enacting P.L. 1869, c. 43. By this statute the power of the court to admit to bail was no longer totally withheld pending review of questions of law as to an offense actually punishable by death (a "capital" offense). Instead, a new criterion was introduced. Discretion to admit to bail pending review of questions of law by the Law Court was conferred "in all cases where the offence charged is bailable." Precisely this statutory grant of power continued thereafter until the promulgation of the Criminal Rules effective December 1, 1965.[9] R.S. 1871, c. 134 § 26; R.S. 1883, c. 134 § 26; R.S. 1903, c. 135 § 26; R.S. 1916, c. 136 § 27; R.S.

**9.** We have no hesitancy in asserting that the statutory grant of power was entirely governed by the criterion whether the "offence charged is bailable", despite the presence of other language which was introduced by the enactment of P.L. 1850, c. 152 and was retained continuously thereafter (with minor changes in form) until 1965. As it appeared in 15 M.R.S.A. § 1701, this other language was:

"When a verdict of guilty is rendered against any person for an offense punishable by imprisonment in the State Prison, or any person is committed pending decision on report or exceptions, as provided, and remains imprisoned after the adjournment of court, he shall be admitted to bail only by the justice trying him, by some person by said justice appointed therefor or by some other Justice of the Superior Court, or by some Justice of the Supreme Judicial Court."

This language was not calculated to enlarge the power of the court to admit to bail *beyond* the limitation imposed by the criterion that the "offence charged ... [be] bailable." Rather,

the intendment was to operate within the "bailable offence" limitation and to impose an *additional* limitation regarding *what official* would have the authority to admit to bail, depending on the context involved.

That this is the correct interpretation of the language has been manifest since it first appeared in 1850. As introduced by P.L. 1850, c. 152, the language was designed to prevent, in the context to which it referred, "two Justices of the peace and quorum for any county", or a "justice of the district court", from exercising the power to admit to bail generally conferred on them by R.S. 1841, c. 171 § 22, and c. 140 § 35, on application by "any prisoner committed for a bailable offence ...", or "any person ... confined in jail for a bailable offence."

Regardless of changes that the revision process has made in the positions of these provisions in the subsequent statutes, the same relationship and purpose, with only changes in regard to the officials who are involved, continued to be evident from 1850 until 1965. This is

1930, c. 146 § 26; R.S. 1944, c. 135 § 29; R.S. 1954, c. 148 § 29; 15 M.R.S.A. § 1701.[10]

We decide that by thus introducing in 1869, and continuing thereafter until December 1, 1965, the concept of the "bailability" of an offense as a limitation upon statutorily conferred judicial discretion to admit an accused to bail once the criminal prosecution had arrived at the stage where the accused stood convicted by reason of a jury verdict of guilt, the legislature had forged a linkage with the "before conviction" concept of "bailability" delineated in Article I, § 10 of the Constitution. It had *statutorily* incorporated that concept as a limitation upon the *statutorily* conferred judicial discretion to admit a defendant to bail *after conviction.*

In consequence of this decision we must undertake two inquiries: (1) ascertaining the meaning of the concept of "bailability" before conviction delineated in Article I, § 10 of the Constitution, and (2) ascertaining the reasonable scope of the application of that meaning as a statutorily prescribed limitation of the statutorily conferred discretionary authority of a court to admit a defendant to bail after conviction.

### 3.

We begin our analysis of the meaning of the "bailability" provisions of Article I, § 10 by referring to the law established in Massachusetts, our mother Commonwealth, by

Section 18 of the Massachusetts "Body of Liberties" enacted in 1641. That Section provided:

> "No mans person shall be restrained or imprisoned by any Authority whatsoever, before the law hath sentenced him thereto. If he can put in sufficient securitie, bayle or mainprise, for his appearance, and good behaviour in the meane time unlesse it be in Crimes Capital, and Contempts in open Court, and in such cases where some expresse act of Court doth allow it."

By virtue of this provision of the Body of Liberties the law of Massachusetts, to quote the language of the Massachusetts Court in *Commonwealth v. Baker*, 343 Mass. 162, 177 N.E.2d 783 (1961), was that

> "[f]rom early colonial times bail appears to have been *allowable in the court's discretion* in capital cases and contempts committed in open court, and *as a matter of right in all other cases.*" 177 N.E.2d at 785 (emphasis added)

Moreover, as shown by *Commonwealth v. Baker,* this continued to be the "basic structure" of the Massachusetts "bail scheme" when in 1820 (and indeed long after) the District of Maine separated from Massachusetts and became a State. 177 N.E.2d at 785.

shown by comparison of the following three sequential lines of statutory provisions:

[R.S. 1841, c. 171 § 22
[R.S. 1857, c. 133 § 14
[R.S. 1871, c. 133 § 16
[R.S. 1883, c. 133 § 16
[R.S. 1903, c. 134 § 18
1 [R.S. 1916, c. 135 § 18
[R.S. 1930, c. 145 § 18
[R.S. 1944, c. 134 § 18
[R.S. 1954, c. 147 § 18
[15 M.R.S.A. § 855

[R.S. 1841, c. 140 § 35
[R.S. 1857, c. 99 § 34
[R.S. 1871, c. 99 § 34
[R.S. 1883, c. 99 § 35
[R.S. 1903, c. 101 § 35
2 [R.S. 1916, c. 104 § 35
[R.S. 1930, c. 113 § 35
[R.S. 1944, c. 113 § 35
[R.S. 1954, c. 126 § 35
[14 M.R.S.A. § 5542

[P.L. 1850, c. 152 § 1
[R.S. 1857, c. 134 § 26
[R.S. 1871, c. 134 § 26
[R.S. 1883, c. 134 § 26
[R.S. 1903, c. 135 § 26
3 [R.S. 1916, c. 136 § 27
[R.S. 1930, c. 146 § 26
[R.S. 1944, c. 135 § 29
[R.S. 1954, c. 148 § 29
[15 M.R.S.A. § 1701

**10.** 15 M.R.S.A. § 1701 was repealed as of December 1, 1965 and the repeal became effective simultaneously with the effectiveness of Rule 46(a).

Thus, the law as to bail before conviction obviously most familiar to those who drafted the Constitution of Maine, as having been the law of Massachusetts which had governed them until 1820, was: (1) a person accused of *any* offense whatever, other than a capital offense or a contempt committed in open court, had a *right* to be admitted to bail, i. e., to have bail fixed, or set; and (2) a person accused of a capital offense or a contempt committed in open court lacked *right* to be admitted to bail, but it was permissible that such an accused be admitted to bail in the exercise of *judicial discretion*.

We therefore take these two basic principles of the Massachusetts law regarding bail as the foundational guide to assist us in interpreting the meaning of the language of Article I, § 10 as it was written in 1820, and stated:

"All persons, before conviction, shall be bailable, except for capital offences, where the proof is evident or the presumption great."

Thus guided, we conclude that as of 1820, Article I, § 10 yielded four basic propositions of law.

First, it preserved the Massachusetts concept of an accused's having a *right* to be admitted to bail and went beyond the Massachusetts law by giving that right a constitutional, not merely a statutory, foundation.

Second, it established that this *constitutional right* to be admitted to bail was absolute in relation to *any* offense whatever, except a *capital* offense, charged against an accused.

Third, it established in regard to capital offenses, as the single category *excepted* from the scope of an accused's *absolute right* to bail, a further departure from the law of Massachusetts. Under the Massachusetts law the *fact alone* that an accused was charged with a capital offense eliminated *totally and unconditionally* his right to be admitted to bail, and it was left *entirely* as a matter of judicial *discretion* whether the accused would be admitted to bail. In contrast, the 1820 version of Article I, § 10 established *in part* the *right* of a person

accused of a capital offense to be admitted to bail; such an accused was given a *conditional* right to be admitted to bail, the condition of the existence of this right being the absence of "proof ... evident or ... presumption great."

Fourth, Article I, § 10 addressed *only* the accused's *right* to be admitted to bail, whether as existing absolutely (in relation to all non-capital offenses) or *conditionally* (in relation to capital offenses where "proof ... evident or ... presumption great" is lacking). Thus, rather than prohibiting the exercise of judicial discretion to admit an accused to bail for all offenses whatever, including those capital, Article I, § 10 left entirely intact judicial power, as authorized by the common law, to exercise discretion to admit an accused to bail for any offense whatever, capital or otherwise.

Such being the law of Maine established by the 1820 version of Article I, § 10 of the Constitution, we next investigate the extent to which that law may have been changed when, eighteen years later, Article I, § 10 was amended, effective March 21, 1838, to read:

"No person before conviction shall be bailable for any of the crimes which now are, or have been denominated capital offences since the adoption of the Constitution, when the proof is evident or the presumption great, whatever the punishment of the crimes may be."

We conclude that even though the 1838 amendment omitted an express affirmative statement of the *right* of an accused to be admitted to bail, it nonetheless preserved the law in all respects as it had been since 1820, except for the single change that it enlarged the class of offenses as to which an accused's *right* to be admitted to bail was *conditional* rather than absolute, i. e., as to which the accused's right existed only in the absence of "proof ... evident or ... presumption great." As thus expanded by the 1838 amendment, that class of offenses comprised not only offenses currently capital but also those "denominated capital" at any time "since the adoption of the Constitution."

The historical record strongly supports this interpretation of the 1838 amendment

of Article I, § 10. Exhaustive research has disclosed nothing to suggest any reason, let alone the compelling kind of reason, that would have made necessary after less than eighteen years a change of constitutional law so drastic as the elimination of the constitutional right of an accused to be admitted to bail before conviction—a right which in 1820 had been set forth in the Constitution's "Declaration of Rights" as the logical implementation of the presumption of innocence.

In addition, the historical record reveals affirmatively, and rather forcefully, that events after 1820 induced the legislature to seek only to amend in a narrow particular respect, not to abolish, the constitutional right of an accused to be admitted to bail before conviction.

By Resolve of March 30, 1837 (1837 Resolves, c. 74) the legislature submitted to the vote of the people the proposal to amend the 1820 version of Article I, § 10 which, as subsequently approved by the people, became effective March 21, 1838. The affirmative statements of the Resolve disclose that the legislature, aware that capital punishment had been abolished for some crimes and might be abolished for others (including murder), had become concerned with the effect of the abolition of the death penalty for particular crimes upon the applicable scope of the 1820 version of Article I, § 10. The legislature had previously manifested this concern by asking the Justices of the Supreme Judicial Court for an advisory opinion on the question, in the words of the legislature:

"If the Legislature shall abolish the punishment of death, will the crime of murder become, by the Constitution, a *bailable offence?*" (emphasis added)

On February 6, 1836, the justices gave their advisory opinion, answering the legislature's question in the affirmative, as follows:

"if the legislature should abolish the punishment of death, the crime of murder, which is now a capital offence, would cease to be such; and being no longer capital, it would ... before conviction, become a *bailable offence* by the Constitution." (See Journal of House of Representatives of the Sixteenth Legislature) (emphasis added)

In short, the justices informed the legislature that an offense is "capital" only if it is currently punishable by death; it does not remain "capital" because at some previous time it had been punishable by death.

It was in light of this advisory opinion that the legislature adopted the Resolve (1837 Resolves, c. 74) submitting to the vote of the people the proposed amendment which was subsequently approved by the people and became effective March 21, 1838 as amended Article I, § 10. Most significantly for our present purposes, the Resolve stated:

"WHEREAS the Judges of the Supreme Judicial Court have given it as their opinion, in answer to a question propounded to them by the Legislature, that if the punishment of death should be abolished by the Legislature the crimes of Treason, Murder and Arson, would become *bailable offences* by the Constitution, in consequence of the phrase 'capital offences' being construed to mean those offences only which are punishable with death; AND WHEREAS the crimes of Rape, Robbery with intent to kill and Burglary which were punishable by the Statute laws with death prior to their repeal by an Act approved February twenty-eighth, one thousand eight hundred and twenty-nine are now by this construction *bailable offences*; Therefore: (emphasis added) "RESOLVED *by the Senate and House of Representatives in Legislature assembled,* That the tenth section of Article first of the Constitution shall be so altered and amended *as to read,* That no person before conviction shall be bailable for any of the crimes which now are, or have been denominated capital offences since the adoption of the Constitution 'when the proof is evident, or the presumption great' whatever the punishment of the crimes may be. *Provided* that a majority of the inhabitants of this State, who are constitutionally qualified to vote for State officers, shall at the annual meeting, on the second Monday of September next decide in favor of such amendment." (emphasis in original)

This recorded history is persuasive to confirm that the 1838 amendment of Article I, § 10 was calculated to change the status quo ante not sweepingly but only in one particular respect. The change contemplated was to establish that removal of the death penalty for any of the crimes punishable by death when, or after, the Maine Constitution was adopted would not cause a person accused of any such crime to gain a constitutional protection he did not enjoy under the 1820 version of Article I, § 10. This specific change was achieved by expanding "capital offences" to read:

> "for any of the crimes which now are, or have been denominated capital offences since the adoption of the Constitution."

Yet, if our analysis is to be complete in this regard, we cannot ignore that the textual language of the 1838 amendment of Article I, § 10 went beyond merely expanding "capital offences"; it also changed the overall structure of the language. Whereas the 1820 version stated:

> "[a]ll persons, before conviction, shall be bailable, except for capital offences . . .",

the 1838 amendment was phrased:

> "No person before conviction shall be bailable for any of the crimes which now are, or have been denominated capital offences since the adoption of the Constitution . . . ."

■ Despite this change of language structure, we conclude that the 1838 amendment preserved the status quo ante in all respects except for the narrow change already discussed.

Beyond the point that the historical record shows affirmatively that it was the legislative purpose to make only this minor change, we emphasize that Article I, § 10 originally was, and remained after the 1838 amendment, a section of the Maine Constitution's "Declaration of Rights." Were the change in the language structure of Article I, § 10 removing the affirmative words "[a]ll persons shall be bailable before conviction" intended to eliminate the constitutional *right* of an accused to be admitted to bail before conviction, it seems anomalous that the negation of such right of the individual as against government would be retained as a part of a constitutional "Declaration of Rights."

Hence, in light of the lessons of the historical record, and the fact that Article I, § 10 continues to be part of the Constitution's "Declaration of Rights", we believe that if the 1838 amending language is reasonably open to the interpretation that it changed the prior constitutional law only in the particular respect that it expanded the notion of "capital offenses", the language must be so construed.

We are satisfied that the 1838 amending language can reasonably be so interpreted, especially because as to

> "any of the crimes which now are, or have been denominated capital offences since the adoption of the Constitution",

the negation asserted is not absolute but is conditional; the negation is operative as to such crimes *only if* "the proof is evident or the presumption great."

This being so, our inquiry must focus upon what was intended as to the situation where "proof . . . evident or . . . presumption great" is *absent.* It is reasonable to say that in such case the word "no" modifying "person . . . shall be bailable" becomes inoperative, and that the affirmative mandate comes into play that the "person . . . shall be bailable", i. e., the accused has a right to be admitted to bail.

Since we thus acknowledge the existence of a constitutional right of a person to be admitted to bail before conviction who stands accused of a crime "now" capital or "denominated capital . . . since the adoption of the Constitution" if "proof . . . evident or . . . presumption great" is lacking, it would be a strange conclusion indeed were we to hold that because the 1838 amendment of Article I, § 10 omits express affirmation of the right of a person accused of *any other* offense to be admitted to bail before conviction, such accused has no constitutional right in any form to be admitted to bail before conviction. Plainly, it must be held the more reasonable conclusion that the 1838 amendment of Article I, § 10 im-

plicitly avows that a person has an *absolute right* to be admitted to bail before conviction if he stands accused of any crime that falls outside the class expressly referred to in the amendment. This *absolute right* contrasts with the *conditional right* to be admitted to bail of a person accused of a crime falling within the class of crimes expressly delineated by the amended language of Article I, § 10, the condition of the existence of the right in such case being the absence of "proof ... evident or ... presumption great."

In summary, then, we decide: (1) the original 1820, as well as the subsequently amended 1838, version of Article I, § 10 addressed only the subject of an accused's *right* to be admitted to bail before conviction; (2) both versions did *not* address, and left unaffected, the subject of the *power* of a court *in the exercise of discretion* to admit an accused to bail before conviction; (3) as to the accused's *right* to be admitted to bail before conviction, Article I, § 10, both before and after 1838, made that right *absolute* in regard to all but a few crimes, and as to these few, the right was made *conditional*, i. e., the right exists *if* there is absent "proof ... evident or ... presumption great"; (4) the only difference between the 1820 and 1838 versions of Article I, § 10 lay in their delineation of the few crimes as to which the accused has a conditional right to be admitted to bail before conviction—the 1820 version describing them as "capital" offenses (those currently punishable by death) and the 1838 version enlarging the class to include not only those offenses "now" capital but also those "denominated capital ... since the adoption of the Constitution."

### 4.

Having thus completed the first inquiry we earlier undertook, to ascertain the correct interpretation of the provisions of Article I, § 10 regarding "bailability" before conviction, we turn to the second inquiry.

As we previously explained, the necessity of our undertaking a second inquiry arose because the statutes in effect from 1869 to 1965 conferring *discretionary authority* on an appropriate court to admit a defendant to bail after conviction made the exercise of such discretion subject to the limitation that "the offence charged is bailable." We had already decided herein that in thus confining the judicial exercise of discretion to admit a defendant to bail after conviction to offenses that are "bailable", the legislative intendment was to adopt the meaning of "bailable offence" given by Article I, § 10 of the Constitution *in the before conviction context*, and to carry over that meaning, as reasonably applicable, to the after conviction context.

Having decided the correct interpretation of the before conviction provisions of Article I, § 10, we now investigate what aspects of such meaning the legislature incorporated, by its use of the concept of an offense as "bailable", to limit the exercise of judicial discretion to admit a defendant to bail after conviction.

Our earlier analysis reveals that neither the original 1820 nor the 1838 amended version of Article I, § 10 referred to an "*offence*" as "bailable." Instead, the textual language spoke only of a "*person*" as "bailable" in relation to offenses. It was the legislature which introduced the notion that *Article I, § 10* had a meaning establishing that an "*offence*" is "bailable." The legislature did this when, in 1836, it asked the justices of the Supreme Judicial Court:

"If the Legislature shall abolish the punishment of death, will the crime of murder become, by the Constitution, a *bailable offence*?" (emphasis added)

The crucial question, then, is what, reasonably, was the legislature's conception when it thus used the words "bailable offence" to express the meaning it had derived from the 1820 version of Article I, § 10?

As our prior discussion has established, Article I, § 10 dealt only with a person's *right*, before conviction, to be admitted to bail as well as the scope of that *right* as being (1) *absolute* in relation to a person's being accused of any offense other than a "capital" offense, and (2) *conditional* in relation to an accusation of a "capital" of-

fense, in which case the condition of the existence of the right was the absence of "proof ... evident or ... presumption great."

With such the meaning of Article I, § 10 when the legislature in 1836 asked the justices of the Supreme Judicial Court whether abolition of the death penalty would cause the crime of murder to "become, by the Constitution, a bailable offence", the legislature reasonably could have meant by "bailable offence" only an offense as to which a person accused of it would "before conviction" have the *absolute*, rather than the conditional, *right* to be admitted to bail. This is the necessary conclusion, since abolition of the punishment of death for an offense would have relevant applicability under Article I, § 10 only to transform the offense into one non-capital, thereby to give a person accused of such offense the *absolute*, rather than conditional, *right* to be admitted to bail before conviction.

■ We therefore conclude that, for our present purposes, the legislature has made clear that at least since 1836, it has conceived an offense to be a "bailable" one if under Article I, § 10 a person accused of such offense would have the *absolute right* to be admitted to bail before conviction.

Thus, from 1869 until 1965, when the legislature made the concept of an offense as "bailable" the criterion limiting the *statutory* grant of power to a court to exercise *discretion* to admit an accused to bail *after conviction*, the legislature thereby confined the reach of that power to those offenses as

to which Article I, § 10 of the Constitution conferred upon a person so accused the *absolute right* to be admitted to bail before conviction. After the 1838 amendment of Article I, § 10, such "bailable" offenses were all offenses *other* than those currently punishable by death or those "denominated" as so punishable at any time "since the adoption of the Constitution."

Moreover, this being the statutory scheme, as incorporating reference to Article I, § 10, for the admitting of defendants to bail after conviction as of December 1, 1965 when Rule 46(a) M.R.Crim.P. became effective, we decide that it was the intendment of that Rule, by its language "in accordance with the Constitution and statutes of this State", to absorb that statutory scheme into the Rule and continue it in force, subject to whatever future change might be made.[11]

■ We decide, then, that murder being an offense which was at some time after the adoption of the Constitution punishable by death, (1) murder is not an offense as to which under Article I, § 10 of the Constitution an accused has an absolute right to be admitted to bail "before conviction"; (2) it therefore was not a "bailable" offense within the meaning of 15 M.R.S.A. § 1701, thus to be encompassed prior to December 1, 1965 within the discretionary power granted to a court to admit to bail after conviction; and, hence, (3) it is excluded from the discretionary power to admit to bail after conviction recognized by Rule 46(a)(2) M.R. Crim.P.

---

11. We are aware that 15 M.R.S.A. § 1701 was repealed by the legislature effective simultaneously with the effective promulgation of Rule 46(a). It could be argued, then, that the Rule's mention of "statutes" is not reasonably to be taken as a reference to a statute which did not survive the effective promulgation of the Rule. The consequences of such approach would be, as we previously explained (at p. 399, ante): first, Rule 46(a)(2), as well as Rule 46(a) as it read when the Criminal Rules were originally promulgated, would be stripped of limiting content and, despite the absence of legislative or judicial intendment to produce such result, the Rule, as of the effective date of its promulgation, would have conferred unfettered judicial discretion to admit a defendant to bail "after

conviction"; and, second, the Supreme Judicial Court could be open to the accusation that it had transgressed the bounds of its authority to promulgate rules of criminal procedure, in that it had effectuated by a rule a drastic change of *substantive* law.

In the face of such consequences, we do not hesitate to reach the conclusion, as in any event the more reasonable alternative in the circumstances, that both the legislative and judicial intendment as of December 1, 1965 was that Rule 46(a), even if its language may have been less technically artistically apt than it could have been for the purpose, incorporated the previously existing statutory scheme governing the admitting of defendants to bail after conviction.

The single justice of the Supreme Judicial Court therefore correctly concluded that the justice of the Superior Court lacked power, and hence could not exercise discretion, to admit the petitioner Nancy A. Fredette to bail after she stood convicted of the crime of murder. Accordingly, she was not being unlawfully restrained of her liberty by the Superior Court justice's refusal to admit her to bail, and her petition for writ of habeas corpus should have been, as it was, denied.

The entry shall be:

Appeal denied; the judgment denying the petition for writ of habeas corpus is affirmed.

All concurring.