**Ronald A. HARNISH**

**v.**

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued May 8, 1987.
Decided Oct. 8, 1987.

Wayne R. Foote (orally), Paul W. Chaiken, Rudman & Winchell, Bangor, for plaintiff.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

This appeal presents a question novel for this court: What showing must the State make under article I, section 10 of the Maine Constitution to defeat the right of a person indicted for a capital offense[1] to have reasonable bail set pending trial? On appeal from the denial of his petition for writ of habeas corpus, Ronald A. Harnish, who has been indicted for murder, contends that due process permits a court to deny him pretrial bail only upon clear and convincing evidence of his guilt. We disagree. We hold that article I, section 10 and established principles of due process require only a showing of probable cause to defeat Harnish's claim that he is constitutionally entitled to bail as of right. Since the standard applied to deny Harnish bail was high-

er than the probable cause standard, we affirm the denial of Harnish's petition for habeas corpus.

On November 4, 1986, Harnish was indicted for knowing and intentional murder. At the conclusion of a bail proceeding held on November 10, 1986, a justice of the Superior Court (Penobscot County) denied Harnish admission to bail, finding that the State had shown a "high likelihood of conviction for murder." Harnish subsequently filed a petition for writ of habeas corpus, which was heard by a single justice of the Supreme Judicial Court. That justice on December 30, 1986, denied Harnish's petition, holding that article I, section 10 of the Maine Constitution requires only a showing that "a reasonable jury could be convinced beyond a reasonable doubt of the defendant's guilt." On appeal Harnish contends that denial of the constitutional right to bail on proof by anything less than "clear and convincing evidence" deprives him of the due process guaranteed by the Maine and United States Constitutions.

## I.

### A.

Article I, section 10 of the Maine Constitution, adopted by amendment in 1838,[2] provides that:

No person before conviction shall be bailable for any of the crimes which now are, or have been denominated capital offenses since the adoption of the Constitution, when the proof is evident or the presumption great, whatever the punishment of the crimes may be.

---

1. For our purposes capital offenses mean "crimes which now are, or have been denominated capital offenses since the adoption of the Constitution." Me.Const. art. I, § 10. As so defined, capital offenses, in addition to murder, include rape (1821 Me.Laws ch. 3, § 1), arson of a dwelling at nighttime (*id.*, ch. 4, § 1), armed robbery (*id.*, ch. 7, § 8), armed burglary of a dwelling in the nighttime (*id.*, ch. 6, § 1), and treason (*id.*, ch. 1, § 1).

2. As adopted at the commencement of statehood, article I, § 10 of the Maine Constitution provided that:

All persons, before conviction, shall be bailable, except for capital offences, where the proof is evident or the presumption great. That provision was amended in 1838 to preserve the bail practices under the original provision with respect to crimes for which capital punishment had been abolished subsequent to 1820. The 1838 amendment made no other substantive changes in the original provision. *See Fredette v. State,* 428 A.2d 395, 404 (Me.1981).

In *Fredette v. State*, 428 A.2d 395 (Me. 1981), we addressed the issue of the right to bail of a person convicted of murder. In *Fredette* we did not consider what standard of proof must be satisfied under article I, section 10 to deprive a person indicted for a capital offense of his constitutional right to bail.

We conclude that the State's showing of probable cause defeats a capital defendant's constitutional right to bail. Probable cause for this purpose, as for other purposes, is defined as

> facts and circumstances ... sufficient to warrant a prudent man in believing that the [accused] had committed or was committing an offense.

*Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975). As originally adopted in 1819 (and preserved in substance by the amendment of 1838), article I, section 10 constitutionalized the Massachusetts bail practice.[3] By that established practice, probable cause was the standard for detaining without bail a person accused of a capital offense. *See Commonwealth v. Trask*, 15 Mass. 277 (1818); D. Davis, *Criminal Justice* 177 (3d ed. 1853). The Massachusetts practice, by which the grand jury's return of an indictment for murder by itself rendered the defendant nonbailable, was consistent with the long-standing practice in England. *See Lord Mohun's Case*, 91 Eng.Rep. 96, 1 Salk. 104 (1696) ("If a man be found guilty of murder by the coroner's inquest, we sometimes bail him, because the coroner proceeds upon depositions taken in writing which we may look into. Otherwise, if a man be found guilty of murder by a grand jury; because the Court cannot take notice of their evidence, which they by their oath are bound to conceal").

■ The bail statutes in the first years of Maine's statehood show that legislators and judges of that era understood article I, section 10 to work no change in the Massa-

chusetts bail practice, and thus reinforce our determination that after a judicial finding of probable cause that the accused has committed a capital offense, he has no constitutional right to bail. Article X, section 3 of the Maine Constitution caused Massachusetts bail statutes (and all other Massachusetts statutes) "not repugnant to this Constitution ... [to] remain, and be in force, until altered or repealed." In 1820 the legislature created a "Board of Jurisprudence," consisting of the three justices of the Maine Supreme Judicial Court,[4] to review the Massachusetts statutes and to compile all the laws then in force in Maine.[5] Silsby, "History of Statutory Law in the State of Maine," vol. 1 M.R.S.A. 6–18 (1985). In 1821 the legislature reenacted those laws essentially without change. *Id.* Those first Maine statutes regarding bail established

> [t]hat it shall be within the power, and be the duty of every Justice of the Peace within his county ... to examine into all homicides, murders, treasons, and felonies done and committed in his county, and commit to prison all persons guilty, or suspected to be guilty of manslaughter, murder, treason or other capital offence; ... and to hold to bail all persons guilty or suspected to be guilty of lesser offences which are not cognizable by a Justice of the Peace; ....

1821 Me.Laws ch. 76, § 1 (reenacting Mass. St.1783, ch. 5, para. 1). The statute pertaining to habeas corpus required the court to bail before trial only petitioners detained for a "bailable" offense (if sufficient bail be offered). *See* 1821 Me.Laws ch. 64, § 5 (reenacting Mass.St.1784, ch. 72, para. 5.) A bailable offense was any offense other than those punishable by death or those for which bail was "prohibited or restrained by particular statutes." D. Davis, *Criminal Justice* 170–71. However, probable cause was required to hold without bail even a person accused of a capital offense:

---

**3.** The Massachusetts bail practice derived from section 18 of the Massachusetts Body of Liberties of 1641. *See Commonwealth v. Baker*, 343 Mass. 162, 165–66, 177 N.E.2d 783, 785 (1961).

**4.** Chief Justice Prentiss Mellen and Associate Justices William Pitt Preble and Nathan Weston, Jr.

**5.** Resolves 1820, ch. 11.

[A]ny person who shall be held in prison upon suspicion of having committed a crime for which he may have sentence of death passed upon him, shall be bailed or discharged, if he is not indicted at the second term of the sitting of the Supreme Judicial Court in the county where the crime is alleged to have been committed, when there are two terms a year in such county.

1821 Me.Laws ch. 59, § 44 (reenacting Mass.St.1784, ch. 72, para. 12).

The substance of those bail laws survived thorough scrutiny in the course of the first major revision of Maine statutes.[6] Chapter 171 of the Revised Statutes of 1841 provided specifically that:

If, on examination [by a magistrate], it shall appear on the whole evidence that no offence has been committed, or that there is not probable cause for charging the prisoner with an offence, he shall be discharged.... But, if it shall appear that an offence has been committed, and that there is probable cause to believe the prisoner to be guilty, and if the offence be bailable by such magistrate, and sufficient bail be offered, it shall be taken, and the prisoner discharged; but, if the offence is not bailable by the magistrate, or no sufficient bail be offered, the prisoner shall be committed to prison to await a trial.

R.S. ch. 171, §§ 16, 17 (1841). Section 22 of that chapter described the power of magistrates to bail:

Any justice of the supreme judicial · court or district court, or any two justices of the peace and quorum for any county, on application of any prisoner committed for a *bailable* offence, or for not finding sureties to recognize for him, may inquire into the case and admit such person to bail.

R.S. ch. 171, § 22 (1841) (emphasis added). *See also* R.S. ch. 140, § 17 (1841). Capital offenses were not "bailable" of right. *Fredette v. State*, 428 A.2d at 403. *See also* R.S. ch. 171, § 9 (1841) (person charged with capital offense not bailable during recess in magistrate's preliminary examination). History thus teaches with more than ordinary clarity that a showing of probable cause that an accused has committed a capital offense could eliminate his constitutional right to pretrial bail.

### B.

■ Even though history demonstrates that probable cause is the constitutional standard for determining the right to bail of one charged with a capital offense, we conclude that the State's burden of showing probable cause should no longer be satisfied by the indictment alone, whatever may have been the rule in an earlier era.

For a number of years many, though by no means all, justices of the Superior Court have followed a practice of independently evaluating the case against a murder indictee to determine whether the proof was evident or the presumption great, to justify holding him for trial without bail.[7] Opinions written by the justices following that practice dispel any notion that they viewed an indictment as eliminating without more the necessity for that independent judicial evaluation. *See, e.g., State v. Nichols*, No. 73–679 (Me.Super.Ct., Cum.Cty., Aug. 23, 1973) (H. Glassman, J.). In addition, article

---

**6.** Chief Justice Prentiss Mellen, by then retired, presided over the work that produced the Maine Revised Statutes of 1841. *See* Silsby, "History of Statutory Law in the State of Maine," vol. 1 M.R.S.A. 39–53 (1985).

**7.** Professor, later Justice, Harry Glassman's comments on M.R.Crim.P. 46(a), originally adopted effective Dec. 1, 1965, reflect his understanding that a murder indictment does not automatically defeat the indictee's constitutional right to pretrial bail:

[Article I, section 10] is not an absolute prohibition upon admission to bail prior to the conviction of a defendant charged with a

"capital offense." Certainly, however, before admitting such a defendant to bail the court would have to evaluate the case against the defendant and conclude that the proof was not evident nor the presumption great.

3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* § 46.3, at 408 (1967) (footnote omitted). *See also* Cluchey & Seitzinger, *Maine Criminal Practice* § 46.14, at 46–23 (1986) ("There is much to be said for the approach of the late Justice Glassman in requiring the State to bear the burden of producing evidence in addition to the indictment to show that the proof is evident or the presumption great").

I, section 10 applies to any crimes "which now are, or have been denominated capital offenses since the adoption of the Constitution," a broad category that includes rape and some forms of arson, robbery, and burglary. *See* n. 1 above. We are not aware that in recent decades any trial judges have taken the position that an indictment for any of those crimes automatically defeats the indictee's constitutional right to bail.

The substance of article I, section 10 as it comes down to us from 1820 requires that we use a probable cause standard for determining "when the proof is evident or the presumption great." That constitutional substance is binding upon us. We do not, however, feel bound by the procedure that in 1820 was thought adequate for the State to establish probable cause. Requiring the State to satisfy the probable cause standard in a bail hearing, even after indictment, is consistent with the present-day circumstances in which we must apply article I, section 10.

■ In view of the fact that article I, section 10 precludes bail as a matter of right when the proof is evident and the presumption great for rape, arson, and burglary, as well as for murder, and that the State has available the evidence that produced the indictment and can with no particular difficulty present it to the bail justice in a probable cause hearing,[8] we rule that a person charged with such a capital offense should be denied his constitutional right to bail only after a bail justice is independently satisfied that probable cause exists. This ruling is consistent with the practice already followed by the majority of the trial judges. An independent judicial determination of probable cause provides an additional procedural safeguard for a defendant's interest in personal liberty. While grand jury proceedings are closed to the accused, the pretrial bail proceeding gives him an opportunity to know and rebut the case against him. That opportunity both comports with our developing concepts of fundamental fairness and also enables the bail justice to evaluate probable cause more accurately.

## II.

In Harnish's pretrial bail proceeding, due process did not require the State to show Harnish's guilt by clear and convincing evidence, but only to establish probable cause. In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that persons charged by information, one of whom had been denied bail because a charge against him carried a potential life sentence, were constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty. The court noted that "[t]he Fourth Amendment ... always has been thought to define the 'process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial" (*id.* at 125 n. 27, 95 S.Ct. at 869 n. 27), and stated broadly that to satisfy the requirement of the Fourth Amendment, "[w]hatever procedure a State may adopt, it must provide a fair and reliable determination of *probable cause* as a condition for any significant pretrial restraint of liberty." *Id.* at 125, 95 S.Ct. at 868–69 (emphasis added).

In *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the United States Supreme Court set forth the factors to be weighed in determining the standard of proof required by due process: "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting

---

8. The pretrial bail proceeding in which the State makes the required probable cause showing is not to be a mini-trial. The State may make that showing on affidavits and reliable hearsay as in other pretrial proceedings to determine probable cause. As the Supreme Court stated in *Gerstein v. Pugh*, 420 U.S. 103, 120, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975):

> The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably ... in a nonadversary proceeding on hearsay and written testimony....

The evidence rules do not apply to "proceedings with respect to release on bail." M.R.Evid. 1101(b)(3).

use of the challenged procedure." *Id.* at 754, 102 S.Ct. at 1395. We determine, as did the Supreme Court in *Gerstein v. Pugh,* 420 U.S. at 112, 95 S.Ct. at 862, that in this pretrial context the probable cause standard "represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime." On the pretrial bail issue, the interest of the defendant is in avoiding a temporary deprivation of personal liberty. That private interest is a strong one. However, we are persuaded that in view of the countervailing state interests, the probable cause standard provides one charged with a capital offense with all the process that is due him in a pretrial bail proceeding. The rationale for denying pretrial bail on a showing of probable cause of guilt of a capital offense is to assure the presence of the accused at trial for that severely punished crime.

> [I]n offenses of a capital nature, no bail can be security equivalent to the actual custody of the person. There is nothing that a man may not be induced to forfeit to save his life [or in Maine, to save himself from a prison sentence of at least 25 years and potentially for life]; and it is no satisfaction or indemnity to the public, to seize the effects of those who have bailed a murderer, if the murderer himself be suffered to escape with impunity.

D. Davis, *Criminal Justice* 167. The entire panoply of state interests served by the criminal justice system are promoted by assuring the presence of the accused at trial.

The role of the bailability determination in the total process that results in a final trial judgment of guilt or acquittal compels us to use a standard no higher than probable cause. The higher the standard of proof, the longer and more complex the pretrial bail proceeding must become, and the more that proceeding duplicates the time and effort involved in the trial itself. The harm to the defendant who is innocent but who might be detained under the prob-

able cause standard is relatively small because the time during which he can be detained is limited by his right to a speedy trial. U.S.Const. amend. VI; Me.Const. art. I, § 6; *see United States v. Salerno,* 481 U.S. ——, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987). Finally, the State's showing of probable cause, while defeating a capital defendant's constitutional right to bail, leaves intact the discretionary power of the court to admit any defendant to bail.[9] That power is beyond the scope of article I, section 10.

> Article I, § 10 addressed *only* the accused's *right* to be admitted to bail, whether as existing absolutely (in relation to all non-capital offenses) or *conditionally* (in relation to capital offenses where "proof ... evident or ... presumption great" is lacking). Thus, rather than prohibiting the exercise of judicial discretion to admit an accused to bail for all offenses whatever, including those capital, Article I, § 10 left entirely intact judicial power, as authorized by the common law, to exercise discretion to admit an accused to bail for any offense whatever, capital or otherwise.

*Fredette v. State,* 428 A.2d at 402 (emphasis in original).

■ A judicial determination of probable cause was all that Harnish was entitled to under article I, section 10 and under the Due Process Clause. The determinations by both the bail and the habeas justices clearly encompassed a finding of probable cause that Harnish had committed murder. We therefore affirm the denial of Harnish's petition for habeas corpus.

The entry is:

Judgment affirmed.

All concurring.

---

**9.** At no time has Harnish sought to be admitted to bail as a matter of discretionary decision by the bail justice. Nor has he asserted any unlaw- ful deprivation of liberty by the failure of the bail justice to exercise discretion to admit him to bail.