NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12556

PEDRO VASQUEZ  vs.  COMMONWEALTH.


Suffolk.     November 5, 2018. - March 28, 2019.

Present:  Gants, C.J., Lowy, Budd, Cypher, & Kafker, JJ.


Bail.


Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on May 25, 2018.

The case was considered by Gaziano, J.


Merritt Schnipper for the defendant.
Katherine E. McMahon, Assistant District Attorney, for the
Commonwealth.


LOWY, J.  In this appeal we review and apply the legal

standards for bail decisions in cases where the defendant has

been charged with murder in the first degree and the judge must

decide whether the defendant should be admitted to bail, or held

without bail to assure the defendant's appearance at future

court proceedings. The defendant,[1] Pedro Vasquez, has been in pretrial detention since his arrest on January 5, 2015, for the murder of his girlfriend. Following the defendant's indictment and arraignment for murder in the first degree and related charges, a judge of the Superior Court ordered him to be held without right to bail, and the defendant's four subsequent requests for admission to bail in the Superior Court were all denied. The defendant then challenged the denial of his bail requests in a petition for relief under G. L. c. 211, § 3, which was also denied by a single justice of the county court. In this appeal from the judgment of the single justice, the defendant contends that, under the constitutional and other legal standards applicable to bail decisions, the Commonwealth's anticipated evidence against him was not strong enough to justify his pretrial detention without bail, given his local family ties and lack of past court defaults or "meaningful" prior convictions. We conclude that a defendant charged with murder in the first degree has no right to bail, but may be admitted to bail in the discretion of the judge. The judge's exercise of discretion should not rest solely on a presumption against bail, but should be based on a careful review of the

---

[1] Although Pedro Vasquez commenced this action by filing a petition in the county court, for convenience, we refer to him as "the defendant."

specific details of the case and the defendant's history.  The judge should consider the nature and circumstances of the offense and weigh the defendant's risk of flight in light of the strength or weakness of the Commonwealth's case and the potential penalty of a sentence to life in prison.  Further appropriate considerations include the defendant's family ties, financial resources, length of residence in the community, character and mental condition, and record of convictions and appearances at court proceedings or of any previous flight to avoid prosecution or any failure to appear at any court proceedings, along with the other factors listed in G. L. c. 276, §§ 57 and 58, insofar as they are relevant.  The defendant is entitled to representation by counsel at a hearing[2] and the opportunity to present argument concerning the relevant bail factors.

Pretrial detention without bail is appropriate where the judge concludes, based on a preponderance of the evidence and the relevant factors for bail, that it is necessary to assure the defendant's appearance at future court proceedings.  The decision must be accompanied by a statement of findings and reasons, either in writing or orally on the record.  Finally, when a bail order comes before a judge for reconsideration, the

---

[2] There is no requirement that there be an evidentiary hearing.

judge should also consider, among other factors, the length of the defendant's pretrial detention and the equities of the case, including the extent of the prosecution's responsibility for the delay, and the strength of the Commonwealth's case, especially if the character of the evidence has changed.

Applying these standards in the present case, we conclude that the bail judge did not abuse his discretion or commit an error of law in denying the defendant's bail request, and therefore affirm the single justice's judgment denying the defendant's petition.

Background. We summarize the facts based on the record available to the bail judge, reserving certain details for further discussion below. Early in the morning of January 5, 2015, police officers responding to a 911 call discovered the body of a woman slumped over in the passenger seat of a sport utility vehicle (SUV) parked on the side of the road in Springfield. She had suffered a single gunshot wound to the head and was bleeding profusely. Attempts to revive her failed, and she was declared dead at the scene. The victim was later identified as the defendant's girlfriend.

Detectives discovered that a home across the street from the crime scene maintained a video security system. The detectives viewed the videotape footage from this system and found that it included the sequence of events surrounding the

shooting. The videotape shows the SUV stopping and parking on the street. The vehicle's rear passenger door on the driver's side opens, and an argument between a man and a woman in Spanish can be heard. The woman demands that the man return her keys and threatens to call the police. A single gunshot can then be heard as the male leaves the vehicle and runs away.

Police also interviewed the victim's family and friends, including the victim's son, her brother, and her brother's girlfriend. The officers learned that the defendant and the victim had been romantically involved and had lived together for four or five years, along with the victim's son. The officers also learned that there had been a history of domestic violence between the defendant and the victim. The victim's son, her brother, and her brother's girlfriend were all familiar with the defendant due to his relationship with the victim. At the police station, the officers played the security videotape separately for each of them, first playing only the audio portion and then showing the video portion to each witness. In each case, they identified the voices of the man and the woman as the defendant and the victim; the victim's brother also noted that the victim had used the defendant's name twice. After being shown the video recording, they also identified the man who fled the vehicle as appearing to be the defendant, although

they could not make a positive identification because the man's face was not visible.

Based on this information, a warrant was issued for the defendant's arrest, and he was taken into custody later that evening.  Following the defendant's indictment and arraignment on charges of murder in the first degree, G. L. c. 265, § 1; unlawful possession of a firearm, G. L. c. 269, § 10 (a); and unlawful possession of a loaded firearm, G. L. c. 269, § 10 (n), a Superior Court judge ordered him to be held without right to bail in May 2015.  Judges of the Superior Court also denied the defendant's four subsequent requests for admission to bail after hearings in July 2016, December 2016, December 2017, and May 2018.  Following the December 2017 and May 2018 decisions of a judge (bail judge) to deny bail, the defendant then filed a petition for review under G. L. c. 211, § 3, in the county court, which was denied by a single justice without hearing in June 2018.[3]

---

[3] In addition to these bail proceedings, the defendant was heard on various motions to suppress evidence.  After evidentiary hearings in April and June 2017, a judge issued orders denying the defendant's motions to suppress certain identifications (including the voice and video identifications described above) and evidence obtained from a search of the defendant's cell phone, but allowing his motion to suppress his postarrest statement to the police.  A different judge denied the defendant's motion to suppress cell site location information evidence from his cell phone service provider after a nonevidentiary hearing in December 2017.  Single justices of the county court allowed the defendant's and the Commonwealth's

Discussion. 1. Standard of review. As we explain further infra, bail decisions concerning defendants charged with murder in the first degree are subject to the discretion of the bail judge, and therefore the bail judge's decision is reviewed for abuse of discretion or error of law. See Commonwealth v. Marshall, 373 Mass. 65, 66-67 (1977) (applying abuse of discretion standard in reviewing denial of bail where defendant was charged with murder in first degree); Commonwealth v. Baker, 343 Mass. 162, 168-169 (1961) (considering whether denial of bail where defendant was charged with murder in first degree may have been tainted by error of law). In this case, the single justice denied the defendant's petition under G. L. c. 211, § 3, because the single justice concluded that the bail judge did not abuse his discretion in rejecting the defendant's request for bail.

As a general matter, we review decisions of the single justice under G. L. c. 211, § 3, for clear error of law or abuse of discretion. See Brangan v. Commonwealth, 477 Mass. 691, 697 (2017); Commonwealth v. Chism, 476 Mass. 171, 176 (2017); Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 602 (2000) (Sharpe). In this instance, however, the single justice did not exercise his

_____

respective requests for leave to appeal from these orders and, following our grant of direct appellate review, their appeals are now pending before us in a separate docket.

discretion,[4] and consequently, we focus our attention on his
legal ruling that the bail judge did not abuse his discretion.
We review this legal ruling independently to determine whether
it is erroneous, without giving any deference to the single
justice's decision.  See Sharpe, supra at 603.  In effect, this
means that we must address the same legal issue presented to the
single justice:  whether the bail judge's decision to deny the
defendant's bail request involved an abuse of discretion or
error of law.  See Chism, supra at 182-185 (directly considering
whether trial judge abused his discretion in denying impoundment
motion, without deference to rulings on that issue by single
justice of Appeals Court and single justice of county court
under G. L. c. 211, § 3).

Insofar as the bail judge's decision involved an exercise
of discretion, we must accord it great deference, and we will
not overturn his decision for abuse of discretion merely because
we would have reached a different result.  L.L. v. Commonwealth,

---

[4] We have previously indicated that the single justice of
the county court has the discretionary power to make de novo
bail decisions in certain circumstances.  See Commesso v.
Commonwealth, 369 Mass. 368, 373 (1975) (under G. L. c. 276,
§ 58, "the single justice has the power to consider the matter
anew, taking into account facts newly presented, and to exercise
his own judgment and discretion without remanding the matter for
reconsideration by the Superior Court").  We need not determine
the scope of this discretionary power or whether it would apply
in the circumstances of this case, given that the single justice
did not exercise this discretion.

470 Mass. 169, 185 n.27 (2014). But that deference is not unlimited. "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). Id. To the extent that the bail judge's decision is premised on legal rulings, we consider those legal issues independently and without deference. See Sharpe, 432 Mass. at 603.

The defendant urges us to go further, asking us to conduct a de novo review of the Commonwealth's evidence against him and, in particular, of the bail judge's statement that the Commonwealth had a "strong case" against the defendant. We decline to do so. The defendant argues that the bail judge's characterization of the Commonwealth's case as "strong" should be reviewed de novo because it is analogous to a factual finding made by a motion judge based on documentary evidence when a defendant has moved to suppress evidence, citing Commonwealth v. Melo, 472 Mass. 278, 293 (2015) ("We review de novo any findings of the motion judge that were based entirely on the documentary evidence . . ."). But the bail judge's statement was not a factual finding, so much as the judge's general assessment of the weight of the evidence made as part of his over-all discretionary bail decision. While we must consider whether the

bail judge's assessment of the evidence involved a clear error of judgment, it is not appropriate for us to substitute our own assessment for his in reviewing his exercise of discretion.

2. Legal standards for bail decisions where the defendant has been charged with murder in the first degree. a. Judicial discretion. Whether to grant bail to a defendant who has been charged with murder in the first degree is a matter for the bail judge's discretion. In Commonwealth v. Baker, 343 Mass. 162 (1961), this court reviewed the history of the common law and statutes pertaining to bail in such cases. We noted that "[f]rom early colonial times bail appears to have been allowable in the court's discretion in capital cases . . . and as a matter of right in all other cases." Id. at 165. We also determined that this basic common-law framework had not been altered by subsequent statutory enactments. Id. at 166-168. In particular, we noted that G. L. c. 276, §§ 42 and 57, which were the principal bail statutes in force when Baker was decided, did not define nonbailable offenses. Id. at 166. We therefore concluded that "one charged with the capital offence of murder in the first degree may be admitted to bail, and that bail in such a case is not a matter of right but is discretionary with the judge, who is to give due weight to the nature and circumstances of the case." Id. at 168. Thus, we held that if the bail judge had denied bail based on the mistaken view that

murder in the first degree was a nonbailable offense, that decision would be tainted by an error of law, but if the judge exercised his discretion, there was no error.  Id.

Although there have been significant developments in the law of bail and pretrial release during the one-half century since Baker was decided, the court's conclusion -- that whether to grant bail to a defendant charged with murder in the first degree is a matter for the judge's discretion -- remains sound. Notably, in 1971 the Legislature rewrote G. L. c. 276, § 58, to establish a presumption of release on personal recognizance pending trial.  See St. 1971, c. 473; Commonwealth v. Ray, 435 Mass. 249, 254 (2001); Commesso v. Commonwealth, 369 Mass. 368, 369, 371 (1975); Matter of Troy, 364 Mass. 15, 35 n.10 (1973). Importantly, however, § 58 specifically excludes from its coverage persons charged with "an offense punishable by death," and we have interpreted that provision to mean that § 58 does not apply to persons charged with murder in the first degree, notwithstanding our holding that the death penalty statute then in effect was unconstitutional.  See Commonwealth v. Flaherty, 384 Mass. 802, 802-803 (1981), citing District Attorney for the Suffolk Dist. v. Watson, 381 Mass. 648 (1980).  Accordingly, "[s]ince the statute does not apply, the question of bail for a person charged with murder in the first degree is a matter of discretion."  Abrams v. Commonwealth, 391 Mass. 1019, 1019

(1984) (rejecting defendant's contention that G. L. c. 276, § 58, restricts judicial discretion to revise or revoke bail in murder in first degree case). See Farley v. Commonwealth, 433 Mass. 1004, 1004 (2000); Magraw v. Commonwealth, 429 Mass. 1004, 1004 (1999).

b. Factors to be considered in exercising discretion. In exercising discretion to decide whether a person charged with murder in the first degree should be admitted to bail, a judge should be guided by the same factors that apply to bail decisions in other types of cases, although the relative weight given to these factors will be affected by the nature and gravity of the offense charged. These factors include, but are not limited to, the common-law historical factors for bail, such as the nature and circumstances of the offense charged and the accused's family ties, financial resources, length of residence in the community, character and mental condition, and record of convictions and appearances at court proceedings or of any previous flight to avoid prosecution or any failure to appear at any court proceedings.[5] Judges should also consider the additional factors listed in G. L. c. 276, § 57, second par.,

---

[5] For a discussion of these factors, see Brangan v. Commonwealth, 477 Mass. 691, 698 (2017), quoting Commonwealth v. Torres, 441 Mass. 499, 504 (2004), and citing Querubin v. Commonwealth, 440 Mass. 108, 115 n.6, 120 (2003).

where the murder or related offenses charged involve domestic abuse or violation of a restraining order, as defined therein.[6] Judges may also wish to consult the list of factors set out in

---

[6] General Laws c. 276, § 57, second par., as amended through St. 2018, c. 69, § 167, states in part:

"Any person authorized to take bail for such violation may impose conditions on a person's release in order to ensure the appearance of the person before the court and the safety of the alleged victim, any other individual or the community; provided, however, that the person authorized to take bail shall, prior to admitting the person to bail, modifying an existing order of bail or imposing such conditions, have immediate access to all pending and prior criminal offender record information, board of probation records and police and incident reports related to the person detained, upon oral, telephonic, facsimile or electronic mail request, to the extent practicable, and shall take into consideration the following:  the nature and circumstances of the offense charged, the potential penalty the person faces, the person's family ties, the person's financial resources and financial ability to give bail, employment record and history of mental illness, the person's reputation, the risk that the person will obstruct or attempt to obstruct justice or threaten, injure or intimidate  or attempt to threaten, injure or intimidate a prospective witness or juror, the person's record of convictions, if any, any illegal drug distribution or present drug dependency, whether the person is on bail pending adjudication of a prior charge, whether the acts alleged involve abuse, as defined in [G. L. c. 209A, § 1], a violation of a temporary or permanent order issued pursuant to [G. L. c. 208, § 18 or 34B; G. L. c. 209, § 32; G. L. c. 209A, § 3, 4, or 5; or G. L. c. 209C, § 15 or 20], whether the person has any history of issuance of such orders pursuant to the aforesaid sections, whether the person is on probation, parole or other release pending completion of sentence for any conviction and whether the person is on release pending sentence or appeal for any conviction."

G. L. c. 276, § 58, first par.,[7] even though that statute does not apply to cases where the defendant has been charged with murder in the first degree, because those factors elaborate upon the common-law factors listed above.  See Brangan, 477 Mass. at 697-698 & n.13 (observing that Superior Court judges sometimes rely on G. L. c. 276, § 58, in their bail orders, even though statute does not apply to bail proceedings in Superior Court, because common-law considerations for bail are among same as those contained in § 58).

Certain aspects of the nature and circumstances of the offense charged merit special attention in a case involving

---

[7] General Laws c. 276, § 58, first par. as amended through St. 2018, c. 69, § 171, states in part:  "In his determination under this section as to whether release will reasonably assure the appearance of the person before the court, said justice . . . shall, on the basis of any information which he can reasonably obtain, take into account the nature and circumstances of the offense charged, the potential penalty the person faces, the person's family ties, financial resources and financial ability to give bail, employment record and history of mental illness, his reputation and the length of residence in the community, his record of convictions, if any, any illegal drug distribution or present drug dependency, any flight to avoid prosecution or fraudulent use of an alias or false identification, any failure to appear at any court proceeding to answer to an offense, whether the person is on bail pending adjudication of a prior charge, whether the acts alleged involve abuse as defined in [G. L. c. 209A, § 1], or violation of a temporary or permanent order issued pursuant to [G. L. c. 208, § 18 or 34B; G. L. c. 209, § 32; G. L. c. 209A, § 3, 4, or 5; or G. L. c. 209C, § 15 or 20], whether the person has any history of orders issued against him pursuant to the aforesaid sections, whether he is on probation, parole, or other release pending completion of sentence for any conviction, and whether he is on release pending sentence or appeal for any conviction."

murder in the first degree.  The potential penalty that the defendant faces, a factor listed in both § 57 and § 58, and the related "possibility of a defendant's flight to avoid punishment," Querubin v. Commonwealth, 440 Mass. 108, 116 (2003), are significant considerations.  The risk of flight is at its greatest where the defendant stands accused of murder in the first degree because of the magnitude of the punishment faced by the defendant upon conviction -- a mandatory sentence of imprisonment for life without the possibility of parole.  See G. L. c. 265, §§ 1, 2; G. L. c. 127, § 133A.[8]  This is "a uniquely severe penalty" that puts the defendant's "life . . . at stake . . . in a way it is not where a lesser crime is charged."  Commonwealth v. Francis, 450 Mass. 132, 135-136 (2007).  Consequently, whenever a defendant is charged with murder in the first degree, there is a significant, inherent risk that the defendant will flee, and in light of that risk, "[i]t is presumed that a defendant charged with murder in the first degree is not entitled to bail."  Commonwealth v. Dame, 473 Mass. 524, 539, cert. denied, 137 S. Ct. 132 (2016).

---

[8] Persons serving a life sentence for murder in the first degree who had attained the age of eighteen at the time of the murder are not eligible for parole.  Persons under the age of eighteen at the time of the offense must be, after serving some mandatory period of incarceration, eligible for parole.  See G. L. c. 265, §§ 1, 2; G. L. c. 127, § 133A.

While this inherent risk may prove significant in the judge's denial of bail in a particular capital case, a generic risk of flight should not be treated as automatically dispositive. See Baker, 343 Mass. at 168. Nor should bail be denied solely on the presumption that a defendant charged with murder in the first degree is not entitled to bail, without considering the particulars of the case, as this would deprive a defendant of an individualized bail decision based upon his or her specific circumstances. See id., quoting 4 W. Blackstone, Commentaries *299 ("there are cases, though they rarely happen, in which it would be hard and unjust to confine a man in prison, though accused even of the greatest offence"). Cf. Stack v. Boyle, 342 U.S. 1, 5-6 (1951) ("traditional standards [for bail] . . . are to be applied in each case to each defendant. . . . To infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act").

In weighing the risk that the defendant will flee to avoid a lifetime sentence to prison without parole, the judge should also consider the strength or weakness of the Commonwealth's evidence against the defendant. See former Fed. R. Crim. P. 46(a)(1), cited in Baker, 343 Mass. at 168 ("A person arrested for an offense punishable by death may be admitted to bail by any court or judge authorized by law to do so in the exercise of discretion, giving due weight to the evidence and to the nature

and circumstances of the offense").  This consideration is important for two reasons.  First, the stronger the evidence, the greater the likelihood that the defendant will be convicted, and hence the greater the defendant's incentive to flee.  See Magraw, 429 Mass. at 1004 (observing that defendant had increased incentive to flee in light of Commonwealth's strong case).  Second, the stronger the evidence, the less likely it is that an innocent defendant will be unfairly detained while awaiting trial.

In sum, in deciding whether to admit a defendant charged with murder in the first degree to bail, the judge's exercise of discretion should not rest solely on a presumption against bail; it should be based on a careful review of the specific details of the case and the defendant's history.  The judge should consider the nature and circumstances of the offense, and weigh the defendant's risk of flight in light of the strength or weakness of the Commonwealth's case and the potential penalty, taking into consideration as well the defendant's family ties, financial resources, length of residence in the community, character and mental condition, record of convictions and appearances at court proceedings or of any previous flight to avoid prosecution or any failure to appear at any court proceedings, along with the other factors listed in G. L. c. 276, §§ 57 and 58, insofar as they are relevant.

c.  Constitutional considerations in the exercise of discretion.  The judge's exercise of discretion is also constrained by the due process guarantees of the Fourteenth Amendment to the United States Constitution and arts. 1, 10, and 12 of the Massachusetts Declaration of Rights, which establish the fundamental principle that "in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  Brangan, 477 Mass. at 704, quoting Foucha v. Louisiana, 504 U.S. 71, 83 (1992).  Although "a defendant does not have a constitutional right to be released on bail prior to trial,"[9] pretrial detention must satisfy due process requirements because it curtails an individual's fundamental right to liberty and freedom from physical restraint before he or she has been convicted of any crime.  Brangan, supra at 705, quoting Querubin, 440 Mass. at 112; Brangan, supra at 702-703.

---

[9] The United States Supreme Court and this court have rejected the argument that the prohibitions against "excessive bail" in the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights extend so far as to bar pretrial detention in all cases.  See United States v. Salerno, 481 U.S. 739, 754 (1987), quoting Carlson v. Landon, 342 U.S. 524, 545 (1952) ("The bail clause was lifted with slight changes from the English Bill of Rights Act.  In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail.  When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept"); Mendonza v. Commonwealth, 423 Mass. 771, 782 n.4 (1996).

There are two prongs to the due process analysis --
substantive due process and procedural due process.  "Under the
test of substantive due process, '[w]here a right deemed to be
fundamental is involved, courts must examine carefully the
importance of the governmental interests advanced and the extent
to which they are served by the challenged [procedure], and
typically will uphold only those [procedures] that are narrowly
tailored to further a legitimate and compelling governmental
interest'" (quotations and citations omitted).  Brangan, 477
Mass. at 703, quoting Querubin, 440 Mass. at 112.  Procedural
due process tests whether governmental action depriving a person
of life, liberty, or property has been implemented in a fair
manner.  Brangan, supra.  Our previous decisions applying these
due process requirements in cases where defendants have been
subjected to pretrial detention offer guidance here.

In Querubin, 440 Mass. at 113-116, we held that pretrial
detention without bail of a defendant charged with drug
trafficking met due process requirements where the court
reasonably concluded after a hearing that pretrial detention was
necessary to assure the defendant's appearance at future
proceedings.  Addressing the substantive due process prong of
the analysis, we held that the Commonwealth and its courts have
a legitimate and compelling interest in assuring a defendant's
presence at trial, and that the procedure for determining

whether to admit a defendant to bail under G. L. c. 276, § 57, applying the factors outlined above, was narrowly tailored to serve that interest.  See id. at 116.  We further held that the requirements of procedural due process were satisfied where the defendant was afforded a hearing and an opportunity to attack the strength of the Commonwealth's case and to present arguments in favor of release, such as the defendant's good character and ties to the community.  See id. at 116-120.  We noted that "the rules of evidence do not apply" in such a hearing, and a "full-blown evidentiary hearing that includes the right to be present and cross-examine witnesses is not needed or required."  Id. at 118.  "The necessary determination can be adequately presented and decided based on documents (e.g., police reports, witness statements, letters from employers and others, and probation records) and the representations of counsel," provided that the evidence is "sufficiently reliable to avoid any significant risk of an erroneous deprivation of liberty."  Id.  However, an evidentiary hearing, "or some variation, may be held in the discretion of the judge when the circumstances of a particular case warrant" it.  Id.  Finally, we held that preponderance of the evidence is the appropriate standard of proof under G. L. c. 276, § 57, for determining whether a person presents a risk of flight and, if a person does present such a risk, that there

is no amount of bail or other conditions that will assure his or her presence as required. Id. at 119-120.

We have also held, in Lavallee v. Justices in the Hampden Superior Court, 442 Mass. 228 (2004), that the defendant has a right to be represented by counsel at a bail hearing. "Because a defendant's liberty, a fundamental right, is at stake at a bail hearing, the principles of procedural due process in art. 12 of the Massachusetts Declaration of Rights are implicated. They include the right to be heard, which necessarily includes the right to be heard by counsel. . . . Neither a bail hearing nor a preventive detention hearing may proceed unless and until the defendant is represented by counsel." Id. at 234.

Where the requirements set out in Querubin and Lavallee are followed, a defendant charged with murder in the first degree may be properly held without bail to assure his or her future appearance without violating due process. Due process demands additional safeguards, however, where the Commonwealth asks for pretrial detention of a defendant due to the danger that he or she may pose to another person or the community. In Aime v. Commonwealth, 414 Mass. 667 (1993), we held that the 1992 amendments to G. L. c. 276, § 58, which authorized judicial officers to deny defendants admission to bail if their release posed a danger to another person or the community, violated due process requirements because the amendments gave judicial

officers "unbridled discretion to determine whether an arrested individual is dangerous," and lacked "procedures 'designed to further the accuracy' of the judicial officer's determination." Id. at 682-683, quoting United States v. Salerno, 481 U.S. 739, 751 (1987). Subsequently, in Mendonza v. Commonwealth, 423 Mass. 771 (1996), we upheld G. L. c. 276, § 58A, which was enacted in 1994 to permit pretrial detention of defendants due to their dangerousness, subject to numerous procedural protections, including limiting the statute's application to cases where certain serious crimes have been charged; giving the defendant the right to an evidentiary hearing where the defendant can testify, present witnesses, and cross-examine witnesses; and authorizing pretrial detention only where a judge finds by clear and convincing evidence that no conditions of release will reasonably assure the safety of any other person or the community. Id. at 773-775, 782-783. Considered together, Aime and Mendonza compel the conclusion that, even where a defendant has been charged with murder in the first degree, a judge must still follow the procedures established in G. L. c. 276, § 58A, before denying bail if the judge would have released the defendant on bail but for the danger the defendant poses to the community.[10]

_____

[10] In the present case, the Commonwealth did not move to have the defendant held under G. L. c. 276, § 58A, nor did the

More recently, in Brangan, supra, we discussed the due process and other constitutional requirements applicable to a defendant who is detained because he or she cannot afford to post the bail set by the court as a condition of his release. We principally focused on the requirement that, in setting the amount of bail, a judge must consider the defendant's financial resources, although the judge is not required to set a bail amount that the defendant can afford to pay. See Brangan, 477 Mass. at 697-698, 700-702. Thus, much of our discussion in Brangan is inapplicable to the situation here, where the defendant has been held without bail on a charge of murder in the first degree.

But some of the due process conditions stated in Brangan also apply in this case. We held that "[a] statement of findings and reasons, either in writing or orally on the record, is a minimum requirement [of due process] where a defendant faces a loss of liberty."[11] See id. at 708. That requirement is

_____

Commonwealth argue that the defendant should be held without bail because he posed a danger to the community.

[11] We recognize that it is often not realistic for the judge to reduce his or her findings to writing in the midst of presiding over a criminal session. Oral findings in most instances are not only permissible, but also to be expected.

equally applicable where a judge orders a defendant to be held without bail.[12]

We also held in Brangan that, when a bail order comes before a judge for reconsideration, the judge should consider the length of the defendant's pretrial detention and the equities of the case. See Brangan, 477 Mass. at 709-710, citing Querubin, 440 Mass. at 118, and Mendonza, 423 Mass. at 781, 790. See also, e.g., United States v. El-Gabrowny, 35 F.3d 63, 65 (2d Cir. 1994) ("Due process analysis of pretrial detention calls for examination of the length of detention, the extent of the prosecution's responsibility for delay of the trial, the gravity of the charges, and the strength of evidence upon which detention was based").[13] Where the defendant has been charged

---

[12] In Brangan, we also required that, where the defendant cannot afford to pay the amount of bail set by the judge, likely resulting in the defendant's long-term pretrial detention, the statement of findings and reasons should explain why no less restrictive condition would suffice to assure the defendant's presence at future court proceedings. See Brangan, 477 Mass. at 707-709. The bail judge's statement of findings and reasons need not specifically address this issue when the defendant has been charged with murder in the first degree, given the inherent risk that the defendant will flee in such cases, as discussed supra.

[13] The length of a defendant's pretrial detention is also effectively limited by Mass. R. Crim. P. 36, as amended, 422 Mass. 1503 (1996), which requires trial within one year of arraignment, subject to certain exclusions, see generally Commonwealth v. Graham, 480 Mass. 516 (2018), and by the right to a speedy trial under the Sixth Amendment to the United States Constitution and art. 11 of the Massachusetts Declaration of Rights, see generally Commonwealth v. Butler, 464 Mass. 706 (2013).

with murder in the first degree, the nature of that calculus will be affected by the gravity of the charge and the complexity of the case. Especially in a murder case, "preparing . . . for trial is a complex process, full of unexpected events and challenges" that can lead to delay for legitimate reasons. Commonwealth v. Graham, 480 Mass. 516, 532 (2018). Nevertheless, where, as here, a defendant has been held without bail for four years while awaiting trial, the length of the detention and the extent of the prosecution's responsibility, if any, for the delay, and the strength of evidence upon which detention was based (especially if there have been changes in the evidence since bail was previously denied, e.g., as a result of a successful motion to suppress), should also be considered on reconsideration.

3. Analysis of the challenged bail decisions. With this legal framework in mind, we now review the bail proceedings in the Superior Court and the ruling of the single justice in the county court.[14]

Various Superior Court judges conducted five separate bail proceedings in the defendant's case, in May 2015, July 2016,

_____

[14] As discussed supra, the single justice did not exercise his discretion in this case, and consequently our review of his decision only involves our independent consideration of his legal ruling that there was no abuse of discretion by the bail judge.

December 2016, December 2017, and May 2018. We focus our review on the December 2017 and May 2018 proceedings, as these were the most recent, and present the most extensive record.[15]

On December 14, 2017, the bail judge conducted a hearing on the defendant's request for bail and his motion to suppress information obtained from his cell phone service provider. During the course of this hearing, defense counsel had an opportunity to present arguments concerning the factors for bail we have cited supra. Counsel noted that the defendant had no prior record of convictions except for the violation of a restraining order, to which he pleaded guilty; had no defaults on his record; had not attempted to flee before his arrest; had family in Springfield; and had lived in the United States for his entire life. Counsel also challenged the strength of the

---

[15] The only information presented to us concerning the first three bail proceedings is contained in the docket entries. According to the docket, the defendant was "[h]eld without right to bail/without prejudice," without any reason being stated, after his arraignment on May 18, 2015. The docket entries for July and December 2016 state that the defendant was "committed without bail" because he was "charged with 1st degree murder." We cannot tell from these entries whether the judges knew that they had discretion to release the defendant on bail and exercised that discretion, or whether they automatically denied the defendant's bail request because of the offense charged, without exercising their discretion. If the latter is what occurred, then those decisions were tainted by an error of law. See Commonwealth v. Baker, 343 Mass. 162, 168 (1961). Nor can we tell what factors those judges may have considered in making those decisions. But we need not resolve these issues, because the defendant was given two more opportunities to argue for his release on bail, in December 2017 and May 2018.

Commonwealth's case against the defendant.  He argued that the visual and audio quality of the security videotape was so poor that it was difficult to identify the voice or image of the apparent perpetrator.  Three members of the victim's family had identified the voice in the videotape as that of the defendant, but defense counsel suggested that the identifications were based on a preconceived belief that the defendant was responsible.  Defense counsel represented that five other persons who knew the defendant and heard the videotape did not recognize the voice.

Defense counsel also stated that the defendant had not attempted to flee and that his ex-wife, daughter, and neighbors all placed him as being at or near his home at the time of the crime.  And he pointed out that the available forensic evidence did not connect the defendant to the crime:  a fingerprint found on the rear window of the vehicle where the victim was shot was not the defendant's fingerprint, and deoxyribonucleic acid (DNA) evidence found under the victim's fingernails belonged to another man with whom she had had a relationship.  Defense counsel asserted that the police nevertheless pursued the defendant because they were influenced by members of the victim's family who assumed that the defendant was the perpetrator.

In response, the prosecutor made the following arguments. With regard to the nature and circumstances of the crime, he described the murder as an "execution . . . a point-blank gunshot to the back of [the victim's] head." As for the strength of the Commonwealth's case, he represented that, in addition to the victim's son and brother and her brother's girlfriend, two other persons had identified the male voice in the videotape as that of the defendant. He noted that twice in the videotape, the victim called the perpetrator "Pedro" -- the defendant's first name.[16] The prosecutor also observed that the fingerprint referenced by defense counsel was on the exterior of the rear window vehicle and the security video recording did not show the perpetrator touching there, so it was not relevant. He acknowledged that the DNA evidence under the victim's fingernails belonged to another man, not the defendant, but noted that this other person had been in a sexual relationship with the victim. The prosecutor also presented arguments on the other factors for bail. He noted the defendant's incentive to flee in light of the severe penalty for murder in the first degree, and pointed out that the defendant had spent part of his life in Puerto Rico and had not worked for three years before

---

[16] Defense counsel argued in rebuttal that his expert linguist denied that the name "Pedro" was used in the videotape and represented that one of the Commonwealth's witnesses had heard other names, not "Pedro," on the audio recording.

the crime.  He represented that the defendant had been the subject of two restraining orders issued under G. L. c. 209A, one protecting the victim and one protecting the defendant's ex-wife, each arising out of his threats to kill the women by shooting them.  He also stated that the defendant had been convicted of violating the order protecting his ex-wife, and that the defendant was on probation for that violation at the time of the crime.[17]  And with regard to the delay in trying the defendant, the prosecutor observed that it had been to the defendant's "benefit as well as to his potential detriment."

In addition to these arguments, the bail judge also considered an affidavit by a Springfield police officer in support of an application for a search warrant to obtain information from the defendant's cell phone service provider. This affidavit corroborated the prosecutor's description of the

---

[17] In rebuttal, defense counsel challenged some of the prosecutor's representations concerning the restraining orders against the defendant.  He stated that the defendant had obtained a restraining order against the victim, that the victim had in turn taken out a restraining order against the defendant, and that both restraining orders had expired because neither the defendant nor the victim appeared to testify.  He stated that two other restraining orders involving the defendant concerned another woman and arose from a telephone call that the defendant made to visit his child.

security videotape and the witnesses' identifications based on their review of that videotape.[18]

Following the December 14, 2017, hearing, the judge ordered the defendant held without bail. Using a Superior Court form, the judge checked boxes citing the following factors for his decision:

- "The nature and circumstances of the offense charged."

- "The potential penalty the defendant faces."

- "The defendant's financial resources and employment record."

- "The defendant's record."

- "The fact that the defendant's alleged acts involve 'abuse' as defined in G. L. c. 209A, § 1."

- "The defendant's history of orders issued against him/her under the aforementioned sections."

- "The defendant's status of being on probation, parole, or other release pending completion of sentence for any conviction."

---

[18] The bail judge later issued a January 8, 2018, memorandum and order denying the defendant's motion to suppress the cell phone service provider information. In that memorandum and order, he incorporated by reference the factual findings and rulings in a September 25, 2017, memorandum and order issued by another judge after an evidentiary hearing on the defendant's previous motions to suppress. Among other rulings, the September 25, 2017, memorandum and order denied the defendant's motion to suppress the voice and visual identifications of the defendant that had been made by the victim's son, her brother, and her brother's girlfriend.

The judge also checked a statement reciting that he had "considered alternative nonfinancial conditions and a lesser bail amount, but . . . concluded that they would not be sufficient to assure the defendant's appearance at future proceedings for the following reasons," and then wrote: "The court recognizes that a person charged [with] 1st degree murder may be admitted to bail[;] however, after hearing, the court exercises its discretion and orders the def[endant] held [without] bail. See [Querubin, 440 Mass. at 112-113]."

Five months later, defense counsel filed a new motion for the defendant's admission to bail, supported by a memorandum of law and affidavits. Among other information, defense counsel's affidavit averred that four alibi witnesses who listened to the videotape did not identify the male voice as the defendant's voice; that the defendant had lived in Massachusetts for twenty years, that he had four daughters and a grandson living in Massachusetts, and that his parents and two brothers lived in Springfield.

The motion was heard on May 8, 2018, by the same judge who had presided over the December 14, 2017, hearing. At the May 2018 hearing, defense counsel represented that the defendant's trial would likely be delayed for another twelve to eighteen months due to his appeals from the denial of his motions to suppress evidence. Defense counsel and the prosecutor also

repeated many of the same points that they had previously made at the December 2017 bail hearing.

The following day, the judge issued an order holding the defendant without bail. The judge cited the same factors as in his December 2017 order, and again indicated that he had considered alternative conditions but had concluded that they would not be sufficient to assure the defendant's appearance at future proceedings. He then stated the following rationale for his decision:

> "This is the [defendant's] 4th request to be admitted to bail. The def[endant] argues that he faces at least an additional year in pretrial detention as a result of interlocutory appeals. After consideration of all submissions, the [defendant's] request is denied. He is charged w[ith] 1st degree murder. This judge heard one of the [defendant's] motions to suppress. It is a strong case for the Commonwealth. It was an execution style killing."

We agree with the single justice that the bail judge's December 2017 and May 2018 orders did not constitute an abuse of discretion or error of law. At both hearings, the bail judge afforded defense counsel a full and fair opportunity to contest the strength of the Commonwealth's case and argue why the defendant should be admitted to bail. The bail judge's orders make it clear that he was aware that he had discretion to decide whether to admit the defendant to bail, and that he was exercising that discretion to deny the defendant's bail requests based on the arguments and submissions presented to him. The

judge's orders also indicate that he appropriately considered the relevant bail factors in making that decision, and the factors he cited are all supported by the prosecutor's presentations at the hearings.  In particular, we note that the bail judge's May 2018 order shows that he specifically weighed the strength of the Commonwealth's case and the prospect of the defendant's continuing detention for another year.

The defendant contends that the bail judge failed to consider adequately the anticipated evidence described by his counsel, including witnesses who would dispute the identification of the defendant as the perpetrator appearing in the videotape and testify that the defendant was elsewhere at the time of the crime, the alleged bias of the victim's family members when they made those identifications, and the lack of forensic evidence tying the defendant to the crime.  The defendant also argues that the bail judge ignored his personal attributes, including his twenty-year residency in Springfield with numerous family members, the absence of any court defaults in his record, and his lack of any "meaningful" prior convictions.  But these arguments weighing in the defendant's favor were counterbalanced by other points presented by the prosecution, including the nature of the offense charged; the identifications of the defendant on the videotape by witnesses; the prior restraining orders taken out against him, his

violation of one of those orders, and the fact that he was on probation at the time of the alleged offense; his lack of employment; and his connections to Puerto Rico.  Finally, although the defendant's pretrial detention has been lengthy, he does not argue that it has resulted from any undue delay by the Commonwealth, and defense counsel acknowledged below that the prospective additional delay in his trial has been caused by his interlocutory appeals from the Superior Court's suppression rulings.

On this record, we cannot say that the bail judge made a clear error of judgment in weighing the factors relevant to his decision, such that the decision falls outside the range of reasonable alternatives, and accordingly, we conclude that the bail judge did not abuse his discretion.  See L.L., 470 Mass. at 185 n.27.

Conclusion.  The judgment of the county court is affirmed.

So ordered.