NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13924

COMMONWEALTH  vs.  BILLOEUM PHAN & others.[1]

June 9, 2026.

Supreme Judicial Court, Superintendence of inferior courts.
     Bail.  Pretrial Detention.  Homicide.

The respondents, Billoeum Phan, Billy Phan, and Channa
Phan, who are the defendants in the underlying criminal
proceeding,[2] appeal from the judgment of a single justice of this
court allowing the Commonwealth's petition for extraordinary
relief pursuant to G. L. c. 211, § 3, and vacating the order of
a Superior Court judge admitting the defendants to bail.  We
affirm.

Background.[3]  In January 2021, indictments returned against
each of the defendants for the September 14, 2020, murder of
Tyrone Phet.  Billy was additionally indicted for intimidation
of a witness, in violation of G. L. c. 268, § 13B.[4]  Following

---

[1] Billy Phan and Channa Phan.

[2] For convenience, we refer to them herein, collectively, as
the "defendants" or, individually, by their first names.

[3] We include information drawn from the electronic dockets.
See Donald v. Commonwealth, 494 Mass. 1016, 1017 (2024),
citing Mushwaalakbar v. Commonwealth, 487 Mass. 627, 631-632
(2021) (court may take judicial notice of docket entries).

[4] Each of the defendants was also indicted for possession of
ammunition without a firearm identification card, in violation
of G. L. c. 269, § 10 (h) (1).

bail hearings in 2021, the defendants were held without bail. The judge who initially decided bail as to Billoeum and Billy noted their ties to the community but declined to exercise his discretion to set bail due to the strength of the Commonwealth's case. The evidence recited in the judge's order included witness testimony corroborated by surveillance footage and global positioning system evidence; motive evidence that the defendants belonged to a street gang and the victim associated with a rival gang that on the night before the murder had attacked a house connected with the defendants' gang; and evidence that Channa attempted to evade detection by selling a vehicle used during the alleged murder two days after it occurred, that Billoeum fled to New Hampshire, and that Billy left his house on the day of his arrest at 5:30 A.M. with his family and $20,000 in cash.[5]

The three defendants were tried together in October and November 2024. Although the jury found Billy not guilty of intimidation of a witness, they were unable to reach a verdict as to any of the other charges, and the trial judge declared a mistrial. After the mistrial, the parties agreed to a new trial date of January 20, 2026.

On January 28, 2026, while empanelling a jury for the second trial, the prosecution disclosed that Sergeant Scott Quigley of the State police, who had been a lead investigator in the case against the defendants and a witness during the first trial, may have been intoxicated when he was involved in a fatal motor vehicle accident while on duty in December 2023. The trial judge issued an order on January 30, 2026, for the production of certain documents related to the December 2023 accident. The trial judge later observed, "Within a few days of my January 30, 2026[,] Order, the discovery produced raised serious questions about the investigation conducted into the December 2023 crash," including potential evidence of untruthfulness as to more than one police witness. On February 3, the trial judge continued the trial, and at a trial

---

[5] The order of the judge initially deciding bail as to Billoeum and Billy is quoted and referenced in the memorandum of decision and judgment issued by the single justice, and as the single justice added, "A different judge ordered Channa Phan detained without bail," but there was no separate written order, and the docket reflects only that Channa was held without bail because he was charged with murder in the first degree.

assignment conference on February 9, the trial was scheduled to resume on April 27, 2026.

Following a hearing on March 6, however, the trial judge issued a further order on March 10 indefinitely continuing the trial. Noting the investigation being conducted by the office of the district attorney for the Suffolk district into any criminal conduct arising from the December 2023 fatal accident and the investigation of that accident, as well as and "[t]o a lesser degree" the investigations being conducted by the office of the district attorney for the northern district and the State police, the trial judge concluded that the "[d]efendants' right to a fair trial and judicial economy" required a longer continuance pending the completion of the criminal investigation arising from Quigley's alleged misconduct. The trial judge acknowledged that "[t]he potential role at this trial for this newly disclosed information [is] quite narrow, though potentially impactful."

In that same order, the trial judge scheduled a bail hearing for March 13, 2026, to consider the defendants' requests for changes in their bail status as a result of the continuance. Following that bail hearing, the trial judge issued an order on March 16, 2026, exercising his discretion to admit the defendants to bail. See Commonwealth v. Herring, 489 Mass. 569, 573-574 (2022). He set a cash bail of $25,000 for each defendant, requiring that, upon any release, the defendants be subject to home confinement "with windows for legal visits and medical visits, with advance notice to [the probation department]," that the defendants turn in any passports and not apply for any new passports, that the defendants stay away from and have no contact directly or indirectly with any witness, and that the defendants not possess any firearm or other dangerous weapon.

In support of his decision to admit the defendants to bail, the trial judge observed that "each defendant [had] been held without bail for more than five years," and that the continuances of the second trial were the results of the Commonwealth's January 28, 2026, disclosure such that "the current delay in this trial [was] attributable to the Commonwealth." Although he had "not yet made findings concerning the prosecutor's knowledge" of Quigley's alleged misconduct, the trial judge further found the following, as to the defendants:

"The circumstances of the offense are extremely serious . . . . The first-degree murder charge by its nature poses the most serious punishment -- life without parole -- which inherently suggests some risk of flight. Although the Commonwealth failed to prove the charge beyond a reasonable doubt in the first trial, there has been no <u>fundamental</u> change to the Commonwealth's evidence since the first trial. The defendants have convictions of violence on their criminal records, which is only slightly mitigated to the extent some of the violent acts occurred at a young age. There is some evidence of defaults by the defendants, but they were short-lived, with no indication of flight to avoid previous charges. All three defendants are life-long residents of Lowell and have many family members in the Lowell area, though I agree with the Commonwealth that the value of those ties should be limited to the extent that family members allegedly engaged in crime together. . . . [T]he overall duration of their pretrial detention together with the reasons for the most recent trial delay strongly favor their request. . . . [T]he disclosure was unquestionably late because of the particular State Police Troopers involved and their role in the case. Because the most recent delay in trial, at least four months and perhaps meaningfully more, is attributable in full to the prosecution, the length of the defendant[s'] pretrial detention and the equities of the case compel the opportunity for bail" (quotation and citation omitted).

That same day, the Commonwealth moved a single justice of this court, requesting, inter alia, to stay the entry of the order pending the resolution of a petition to the single justice, and the motion was allowed to that extent. In its petition to the single justice, filed on March 18, the Commonwealth argued, first, that the trial judge erred in continuing the matter indefinitely to obtain evidence of the alleged police misconduct, which evidence the Commonwealth argued was inadmissible, and in using that continuance to justify bail. Second, the Commonwealth argued that the trial judge abused his discretion in weighing the relevant factors when admitting the defendants to bail. The defendants opposed the petition, contending, inter alia, that the trial judge acted within his discretion in deciding to admit the defendants to bail.

On March 23, 2026, the single justice issued a memorandum of decision and judgment allowing the Commonwealth's petition and vacating the trial judge's order admitting the defendants to

bail. The single justice concluded that the trial judge did not abuse his discretion in granting continuances to allow the defendants "additional time to learn the results of the ongoing investigations into Quigley's conduct," including "the extent of information . . . known by the [office of the district attorney for the northern district]." As to bail, the single justice concluded that "nothing regarding the factors that underlay detention without bail in the first instance -- the seriousness of the charges against the defendants and the sentence to be imposed if they are convicted, and the potential risk of flight -- ha[d] changed" since bail was initially denied in these cases. The single justice also considered the defendants' extensive criminal histories.

The single justice concluded that the only thing that had changed since the defendants were initially held without bail was the amount of time that the defendants had been held. Even so, she found that "[t]he lion's share of that delay . . . occurred prior to the defendants' first trial, and between the mistrial and the start of the second trial in January 2026," and she observed that the trial judge "did not find that any of that portion of the delay was the fault of the Commonwealth" and did not find "that in the interim the strength of the Commonwealth's case justifying the initial detention ha[d] waned." Consequently, the single justice concluded that "[i]n these circumstances, the weight placed by the judge on the time factor . . . [fell] outside the range of reasonable alternatives, where the reasons underlying the defendants' detention have not changed and overwhelmingly suggest that the defendants present a risk of flight as much today as they did when they were initially ordered detained in 2021." The defendants appeal.

Discussion. "[W]e review decisions of the single justice under G. L. c. 211, § 3, for clear error of law or abuse of discretion." Herring, 489 Mass. at 573. "Where, as here, the single justice reviewed the propriety of a bail order" but did not exercise her discretion to review bail de novo, "we focus our attention on [the single justice's] legal ruling that the bail judge . . . abuse[d] his discretion."[6] Jones v.

---

[6] But for information from the electronic dockets, as noted supra, "[w]e confine our review in this appeal to the materials that were before the single justice." Russell v. Nichols, 434 Mass. 1015, 1016 n.4 (2001). See Moreno v. Commonwealth, 458 Mass. 1001, 1002 (2010). The defendants' motion to accept a nonconforming and expanded record appendix and transcript is denied.

Commonwealth, 496 Mass. 1011, 1013 (2025), quoting Vasquez v. Commonwealth, 481 Mass. 747, 751 (2019). See Vasquez, supra. Deciding whether the single justice erred or abused her discretion therefore "requires us to determine 'whether the bail judge's decision . . . involved an abuse of discretion or error of law.'" Jones, supra, quoting Vasquez, supra. In reviewing the propriety of an order disposing of a motion to reconsider bail, we may also look to the findings of the judge who initially set bail in the case, where those findings remain relevant and applicable. See Pinney v. Commonwealth, 484 Mass. 1003, 1006 (2020), S.C., 487 Mass. 1029 (2021).

"[B]ail decisions concerning defendants charged with murder in the first degree are subject to the discretion of the bail judge." Herring, 489 Mass. at 573-574, quoting Vasquez, 481 Mass. at 750. See Commonwealth v. Baker, 343 Mass. 162, 168 (1961) ("bail [for a defendant charged with murder in the first degree] is not a matter of right but is discretionary with the judge, who is to give due weight to the nature and circumstances of the case").

In exercising his or her discretion, a bail judge "should be guided by the same factors that apply to bail decisions in other types of cases, although the relative weight given to these factors will be affected by the nature and gravity of the offense charged." Vasquez, 481 Mass. at 753.

> "The main considerations are 'the nature and circumstances of the offense' and 'the defendant's risk of flight.' . . . The defendant's flight risk is evaluated with reference to, among other things, 'the strength or weakness of the Commonwealth's case,' 'the potential penalty,' and 'any [past] failure to appear at any court proceedings.'"

Herring, 489 Mass. at 576, quoting Vasquez, supra at 756. "Further appropriate considerations include the defendant's family ties, financial resources, length of residence in the community, character and mental condition, and record of convictions and appearances at court proceedings or of any previous flight to avoid prosecution . . . , along with the other factors listed in G. L. c. 276, §§ 57 and 58, insofar as they are relevant." Vasquez, supra at 748. Moreover, where a judge is reconsidering bail, the judge "should also consider . . . the length of the defendant's pretrial detention and the equities of the case, including the extent of the prosecution's responsibility for the delay, and the strength of the

Commonwealth's case, especially if the character of the evidence has changed."  Id. at 748-749.

The "potential penalty" and "risk of flight" are "significant considerations" in a prosecution for murder in the first degree.  Vasquez, 481 Mass. at 755.  Murder in the first degree is punished by "a mandatory sentence of imprisonment for life without the possibility of parole," and this "'uniquely severe penalty' . . . puts the defendant's 'life . . . at stake . . . in a way it is not where a lesser crime is charged.'"  Id., quoting Commonwealth v. Francis, 450 Mass. 132, 135-136 (2007), S.C., 477 Mass. 582 (2017).  The charge therefore entails "a significant, inherent risk that the defendant will flee."  Vasquez, supra.  Indeed, "[i]t is presumed that a defendant charged with murder in the first degree is not entitled to bail."  Id., quoting Commonwealth v. Dame, 473 Mass. 524, 539, cert. denied, 580 U.S. 857 (2016).

But a bail judge's discretion as to such a defendant "is not unlimited."  Pinney, 484 Mass. at 1005.  For one thing, a decision "should not rest solely on a presumption against bail, but should be based on a careful review of the specific details of the case and the defendant's history."  Id. at 1006, quoting Vasquez, 481 Mass. at 748.  Moreover, "[a] judge's discretionary decision constitutes an abuse of discretion where . . . the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives."  Vasquez, supra at 751.

Here, there was a presumption against bail for the defendants because they were charged with murder in the first degree, and the trial judge who reconsidered bail found the allegations extremely serious and subject to the penalty of life without parole, inherently suggesting a risk of flight.  Further, he concluded that there had been no fundamental change to the Commonwealth's evidence since the first trial, that the defendants had criminal records with convictions of crimes of violence and some evidence of defaults, and that the weight of their ties to the community and family connections was limited by the allegations that the family members engaged in crime together.  While the trial judge noted no fundamental change in the evidence, the strength of the Commonwealth's case as to the murder charges had been detailed, as described supra, by the judge who initially set bail for Billoeum and Billy, including evidence of attempts to evade detection and avoid prosecution

through flight.[7]  The defendants' criminal histories were replete with past convictions, including for serious offenses, and as to Billy and Channa, they additionally reflected failures to appear and violations of probation.

In light of these considerations, we agree with the single justice that the trial judge abused his discretion by assigning too much weight to the length of the defendants' detention and what he deemed to be the equities of the case, i.e., the disclosure of the alleged misconduct surrounding Quigley's 2023 fatal accident and the resulting State police investigation.  In his order reconsidering bail, the trial judge did not make a finding with respect to the impact on the first trial of the failure to disclose.  Rather, as the trial judge concluded, after the mistrial in November 2024, the parties selected a new trial date of January 2026, over a year out.  In sum, the single justice was well within her discretion to conclude that, at the time of the trial judge's March 16 order reconsidering bail, "[t]he lion's share of th[e] delay" in the defendants' case had occurred prior to January 2026, and that the trial judge "did not find that any of that portion of the delay was the fault of the Commonwealth."  Consequently, we conclude that the single justice did not abuse her discretion in allowing the Commonwealth's petition and in vacating the trial judge's order admitting the defendants to bail.

<u>Judgment affirmed</u>.


The case was submitted on briefs.
<u>Mark Wester, Adriana Contartese, William J. Dolan, & Lorenzo Perez</u> for the respondents.
<u>Casey E. Silvia & Jamie Michael Charles</u>, Assistant District Attorneys, for the Commonwealth.

---

[7] The defendants argue that changed circumstances existed insofar as Billy was found not guilty of intimidation of a witness, as they contend that in order to reach this finding, the jury were required to discredit one of the Commonwealth's key witnesses, whose expected testimony was relied on by the judge who initially denied bail.  It was not clear from the record before the single justice why the jury in the first trial found Billy not guilty on this charge, and in any event, as the judge who initially set Billoeum and Billy's bails observed, the strength of the Commonwealth's case with respect to the murder charges involved additional evidence supporting this witness's testimony.